Scot L. Claus (#014999)
sclaus@dickinsonwright.com
Vail C. Cloar (#032011)
vcloar@dickinsonwright.com
Holly M. Zoe (#033333)
hzoe@dickinsonwright.com
DICKINSON WRIGHT PLLC
1850 N. Central Ave., Suite 1400
Phoenix, Arizona 85004-4568
Telephone: (602) 285-5000
Facsimile: (844) 670-6009
[Firm Email:  courtdocs@dickinsonwright.com]
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| June Durr, an individual and Loyalty Restaurant & Lounge LLC dba Loyalty Lounge, an Arizona Limited Liability Company,<br><br>    Plaintiffs,<br><br>v.<br><br>City of Scottsdale, a municipal entity; Christian Bailey, an individual acting under the color of law; Stephen Smith, an individual and John and/or Jane Doe I-X, individual(s) acting under the color or law,<br><br>    Defendants. | Case No.: 2:23-cv-00752-SMB<br><br>**MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**(Oral Argument Requested)** |

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and this Court's Order (Doc. 13), Defendants request that the Court enter judgment in their favor on the Complaint filed by Plaintiffs June Durr and Loyalty Restaurant & Lounge LLC ("Loyalty Lounge") as a matter of law.  Plaintiffs' claims fail for a multitude of reasons. Among them: Plaintiffs' civil rights claims against Detective Bailey and Officer Smith fail because both are entitled to qualified immunity. In any event, Plaintiffs have not pled facts demonstrating that Detective Bailey and Officer Smith intentionally treated Plaintiffs differently because they are members

of a protected class. Because Plaintiffs' civil rights claims against Detective Bailey and Officer Smith fail, the derivative *Monell* claim against the City of Scottsdale ("City") also fails. Moreover, Plaintiffs failed to plead with specificity any policy, practice, or custom the contributed to a constitutional violation. As for the state law claims, Plaintiffs' gross negligence claim fails because Plaintiffs plead no recognized relationship that would impose a duty on any Defendant. Count Five (interference with contract) should be dismissed because Plaintiffs have failed to identify any contracts or specific, prospective "buyers" with which any Defendant interfered. Plaintiffs' abuse of process claim should be dismissed because as a matter of Arizona law, merely reporting information to an administrative agency falls short of initiating a judicial proceeding. Finally, to the extent that any of Plaintiffs' claims are predicated upon the communication of information to the Arizona Department of Liquor Licenses and Control ("Department of Liquor"), such conduct cannot support any of Plaintiffs' claims under the *Noerr-Pennington* doctrine.

This Motion is supported by the attached Memorandum of Points and Authorities and Certificate of Counsel.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION AND FACTUAL BACKGROUND**

This case arises from police officers reporting admitted violations of state and local law and the Plaintiffs' voluntary surrender of their liquor license. Plaintiff Loyalty Lounge operated an establishment in Old Town Scottsdale, Arizona, which was connected with a significant amount of violence in the area.[1]  (Doc. 1 at ¶¶ 15, 33, 44-45). In addition to creating

---

[1] In their Complaint, Plaintiffs disingenuously assert that because there was no violence "INSIDE" Loyalty Lounge, that it was somehow not creating a public safety issue. (Doc 1 at ¶ 33). Even if that made sense, it remains obvious that public safety issues outside of Loyalty Lounge would draw the attention of governmental officials concerned with safety of liquor-serving establishments in Old Town.

public safety issues, Loyalty Lounge struggled to comply with other City ordinances including those relating to zoning and to the sale of liquor. (Doc. 1 at ¶¶ 30-31).

The Complaint alleges that Detective Bailey, a police officer with the Scottsdale Police Department serving as the "liquor liaison," met with Plaintiff Durr at the Loyalty Lounge in May 2021, which led to a liquor inspection of the premises. (Doc. 1 at ¶ 17.) The Complaint explains that the liquor inspection identified issues including the involvement of a "hidden owner,"[2] and issues with the employee contact log, among other things. (*Id.* at ¶ 18.) Detective Bailey's inspection led to the creation of a report documenting his findings, which was then shared with the Department of Liquor. (*Id.* at ¶ 20.) Shockingly, despite actually *admitting* their failure to comply with state and local laws (*See* Consent Agreement and Order 000259-22, attached hereto as Exhibit A, at 1, 4), the Complaint repeatedly attempts to characterize the inspection and the resulting findings as improper and false. (*Id.* at ¶¶ 18, 20-21).

With respect to Officer Smith, the Complaint further alleges that Officer Smith, working as a zoning compliance officer for the City of Scottsdale, inspected Plaintiffs' establishment, found that it violated several zoning ordinances (including the erection of a fence without a permit), and required Plaintiffs to comply with the City's zoning ordinances (including the removal of the fence) (*Id.* at ¶¶ 30-32.) There were numerous zoning issues and Plaintiffs conceded that they were responsible for at least one zoning violation. (*Id.* at ¶¶ 30-32, 43.) The Complaint also makes the preposterous claim that Officer Smith "wrote false reports and used the Scottsdale Police Department as witnesses" in connection with a food audit *performed by the Department of Liquor*. (*Id*. at ¶ 49.)[3] The Complaint also alleges that Detective Bailey communicated with Plaintiffs' landlord. (*Id*. at ¶ 36.)

---

[2] As it turns out, the "hidden owner" was June Durr's son, Javon Journe-Durr who is a felon. *See, e.g.*, *United States v. Journe-Durr*, Case No. 11-10342 (E.D. Mich. 2011).

[3] As is emblematic of much of the Complaint, Plaintiffs seem to conflate a *State agency*—the Department of Liquor—with municipal actors. However, the Court should not be confused. The **Department of Liquor**, not the City of Scottsdale nor any of its staff, conducts "restaurant audits" to "ensure that they maintain a 40:60 food-to-liquor sales ratio required by Title 4."

- 3 -

Unsurprisingly given its inability to comply with state and local laws, Loyalty Lounge struggled to comply with state law governing its liquor license.[4] Ultimately, Loyalty Lounge voluntarily "surrendered" its liquor license.[5] (*Id.* at ¶ 64.) That surrender was based on Plaintiffs' *admission* that it had engaged in conduct which constituted "violations of A.R.S. § 4-205.02(M) and 4-213(C)(1)." (*See* Ex. A at 1.) Under those statutes, a restaurant liquor licensee must "derive[] at least forty percent of . . . gross revenue from the sale of food," or else face revocation or suspension of that license. A.R.S. §§ 4-205.02(M), 4-213(C)(1). Stated simply, Plaintiffs gave up their liquor license because they admittedly did not comply with the statutory requirements for the type of license they held.

## II.   ARGUMENT

Despite admittedly violating state and local law, Plaintiffs try hard to blame anyone but themselves, and ask the Court to conclude that Plaintiffs have a constitutional right to be free from the consequences of those failures on the basis of Plaintiff Durr's race and gender. There is no such constitutional right, let alone one that is "clearly established." Even more fundamentally, the Complaint does not plausibly (or even implausibly) allege that either Officer Smith or Detective Bailey manifested an intent to discriminate against June Durr or Loyalty Restaurant & Lounge, LLC.[6] Nor does the Complaint allege that Officer Smith or

---

Department of Liquor, *Restaurant Audits*, https://azliquor.gov/restaudit.cfm;*see also* A.R.S. § 4-213(A) ("The director [of the Department of Liquor] may require a restaurant to submit an audit of its records to demonstrate compliance with A.R.S. § 4-205.02(H)."). Here, the State— not any of the defendants—audited the Plaintiff's establishment; Plaintiff failed that audit.

[4] Among other issues, Loyalty Lounge conceded that it was allowing an unidentified person to act as a manger or controlling person of the licensee in violation of state law. (See Consent Agreement and Order 000366-21, attached hereto as Exhibit C, at 1). It is axiomatic that the Court may take judicial notice of the "records and reports of administrative bodies." *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012).

[5] The Complaint seems to suggest that Loyalty Lounge had legal counsel at the time of its surrender, as well. (Doc. 1 at ¶¶ 64-65.)

[6] Defendants specifically preserve their ability to challenge whether a limited liability company *possesses* a race or gender for the purposes of a Section 1983 Equal Protection claim. Because Plaintiff did not allege the requisite intent, such argument is not necessary for the Court to dispose of Plaintiffs' claims.

- 4 -

Detective Bailey treated anyone "similarly situated" differently than the Plaintiffs. Plaintiffs allege that Defendants were somehow "grossly negligent" without pleading or identifying any legally cognizable duty. They also allege that Detective Bailey and the City somehow interfered with some unknown contracts by, quizzically, using "excessive and unreasonable force" against June Durr's son. Plaintiffs urge that Detective Bailey and the City committed the tort of abuse of process by merely reporting issues to the Department of Liquor. Those claims are meritless and are based on protected conduct.

### A. Counts One and Two are barred by qualified immunity.

#### 1. Qualified immunity exists to protect Detective Bailey and Officer Smith from the burdens of litigation.

To highlight the dispositive application of qualified immunity in this case, a discussion of the law governing that doctrine is helpful and makes manifest Plaintiffs' failure to overcome that defense. Qualified immunity is "an entitlement to not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It is designed to protect government officials from civil liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

In determining whether qualified immunity shields the defendant from liability and the other "burdens of litigation," trial courts are directed to apply a two factor test:

> A state actor . . . is entitled to qualified immunity in an action filed under § 1983 if his or her conduct either does not violate a federal constitutional right, or the constitutional right was not clearly established on the date of the alleged violation.

*Saucier v. Katz*, 533 U.S. 194, 2001 (2001), overruled in part, *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The questions need not be considered in any particular order, but if the answer to *either* question is "no," then the government actor is entitled to qualified immunity. *Pearson*, 555 U.S. at 236. Even so, "'[i]n general, courts should think hard, and then think

- 5 -
4873-1033-4315 v11 [53387-19]

1  hard again, before turning small cases into large ones' by resolving a constitutional question
2  despite the plaintiff's inability to establish a violation of a clearly established right." *Evans v.*
3  *Skolnik*, 997 F.3d 1060, 1066 (9th Cir. 2021) (quoting *Camreta v. Greene*, 563 U.S. 692, 707,
4  (2011)). In other words, "if no clearly established law shows that the officers' conduct was
5  unconstitutional," then the Court should not reach the constitutional question. *Id.* (quoting
6  *O'Doan v. Sanford*, 991 F.3d 1027, 1036 (9th Cir. 2021)).

7      To constitute a "clearly established" right protected by the Equal Protection Clause of
8  the United States Constitution, a plaintiff must be able to point to "a case where an officer
9  acting under similar circumstance . . . was held to have violated" that constitutional provision.
10 *White v. Pauly*, 580 U.S. 73, 79 (2017). Vague assertions of "clearly established" rights are
11 plainly insufficient. The "Supreme Court has 'repeatedly told courts—and the Ninth Circuit in
12 particular—not to define clearly established rights at a high level of generality.'" *S.B. v.*
13 *County of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017) (quoting *City & Cnty. of San*
14 *Francisco, Cal. v. Sheehan*, 575 U.S. 600, 613 (2015)). The "clearly established"
15 constitutional right at issue in the case must be sufficiently "particularized to the facts of the
16 case." *Davis v. United States*, 854 F.3d 594, 599 (9th Cir. 2017). Stated differently, "the
17 dispositive question is whether the violative nature of *particular conduct* is clearly
18 established." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).

19     In light of these standards, Plaintiffs' Complaint fails in myriad respects. First,
20 Plaintiffs can point to no "particular conduct" engaged in by Defendants Bailey or Smith that
21 violated *any* right. *Id*. Nor does the Complaint plausibly allege conduct undertaken by
22 Defendants Bailey or Smith that violate a "clearly established" right.

23     **2.**    **Officer Smith is entitled to qualified immunity.**

24     Plaintiffs have not—and cannot—demonstrate that Officer Smith's conduct in
25 investigating allegations of zoning violations, issuing citations and warnings for such zoning
26 violations, or issuing complaints for a Plaintiff's failure to a remedy zoning violations violated

- 6 -

a clearly established constitutional right. Indeed, as the Ninth Circuit has observed, "the existence of a statute or *ordinance authorizing particular conduct* is a factor which militates in favor of the conclusion that a reasonable official would find that conduct constitutional." *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994) (emphasis added).

Here, the Scottsdale Zoning Ordinance not only "authorized" Officer Smith to cite Plaintiffs for zoning code violations, it *required* such citations. Enforcement of the Zoning Ordinance is mandatory and, under § 1.201, the "Zoning Administrator **shall** enforce this Zoning Ordinance." (Emphasis added). Moreover, based upon Plaintiffs' admission in a binding Consent Decree that Loyalty Lounge "failed to derive at least 40% of its gross revenue from food sales," *see* Exhibit A at 1, it was unquestionably proper for Officer Smith to investigate whether Loyalty Lounge was improperly operating as a "bar or cocktail lounge"[7] without a conditional use permit from the City. Section 1.1401 of the Zoning Ordinance is categorical as to the penalties for that violation and left Officer Smith no discretion:

> *Any person*, firm, corporation, partnership, or association, whether as principal, owner, agent, tenant, or otherwise, *who violates*, disobeys, omits, or refuses to comply with, or who resists the enforcement of any of the provisions of this Zoning Ordinance *is subject to a civil sanction* (by issuance of a civil citation or a long form complaint) or administrative remedy, including an administrative consent order.

(Emphasis added.) Likewise, Plaintiffs concede they installed a fence in violation of the zoning ordinance (Doc. 1 at ¶¶ 29-31.)

In a similar case, another division of this Court has recently granted qualified immunity to a code enforcement officer who required an individual to apply for a conditional use permit to legally operate a church before opening. *Henry v. City of Somerton*, CV-18-03058-PHX-

---

[7] The Scottsdale Zoning Ordinance also provided definitions to guide Officer Smith. In particular, § 3.100 of the Zoning Ordinance defined a "bar or cocktail lounge" as including "any business that offers alcoholic beverages for sale . . . and" *either* requests "age verification . . . for admittance," "[a] cover charge," or generates less than 40% of its revenue "from the sale of prepared food." Critically, pursuant to § 11.201 of the Zoning Ordinance, the operation of a bar or cocktail lounge was "allowed by conditional use permit" only.

DJH, 2021 WL 2514686, at *7 (D. Ariz. June 17, 2021). In *Henry*, the plaintiff asserted that the Code Enforcement Officer had discriminated against the plaintiff as a result of his religion by issuing a "stop work order" and "[t]wo separate criminal citations." This Court soundly rejected that assertion. Instead, it concluded that "a reasonable officer would have not" considered the issuance of a stop work order or citations to have violated the plaintiff's "constitutional rights." *Id*., 2012 WL 2514686 at *7.

This Court should reach a similar conclusion here. It defies reason to suggest that a reasonable officer in Officer Smith's shoes would have understood that his conduct of investigating and issuing notices or citations to them for their *admitted violation* of the Zoning Ordinance violated a "clearly established right" held by Plaintiffs. Further, because Officer Smith was *required* to enforce the City's zoning ordinances, he should be presumed to have been acting in accordance with the Constitution. *Id*. Although Plaintiffs wish to perpetuate the fiction that Officer Smith issued notices of violation to Plaintiffs because of June Durr's race and gender, that assertion (in addition to being unsupported by any plausible factual allegation) is entirely belied by the fact that Officer Smith issued a "civil ticket and complaint" to the *landlord as well*. (*See* Doc. 1 at ¶ 36; Compliance Notice, Final Compliance Notice, and Civil Ticket and Complaint to Loyalty Lounge, attached hereto as Exhibit C; Compliance Notice, Final Compliance Notice, and Civil Ticket and Complaint to Craftsmans Table LLC, attached hereto as Exhibit D.)[8] Simply put, Officer Smith is entitled to qualified immunity.

### 3.     Detective Bailey is entitled to qualified immunity.

With respect to Detective Bailey, the Complaint is more voluble but no less ineffectual. Plaintiffs cannot point to a case making any right "clearly established," nor can they identify that right with the required particularity. The Complaint asserts that Detective Bailey sent

---

[8] As noted above, this Court may treat a public records, including court records, as judicially noticed facts without transmuting this motion into one for summary judgment. As reflected in Exhibit D, the landlord was cited for the "business operating as a bar" without having obtained a conditional use permit.

- 8 -
4873-1033-4315 v11 [53387-19]

reports to the Department of Liquor regarding the management, control, and/or ownership of the establishment by an undisclosed individual (Doc. 1 at ¶¶ 20-22, 27, 33-35) and rampant gun violence and other violent incidents (*id.*, ¶¶ 39-40, 44, 53-54, 58-60, 62, 66, 69) connected to Loyalty Lounge. The Complaint also alleges that "Defendant Bailey rejected" Plaintiffs' "Public Safety Plan." (*Id.* at ¶ 71). Even taking those assertions as true, Plaintiffs cannot overcome qualified immunity.

It was not clearly established at any time prior to the filing of the Complaint that it violated the United States Constitution for an officer to inspect an establishment licensed to serve alcohol in the State of Arizona. Indeed, as an express condition to being granted a liquor license, licensees acknowledge and agree to inspections. *Day v. Henry*, CV-21-01332-PHX-GMS, 2023 WL 5095071, at *6 (D. Ariz. Aug. 9, 2023) (recognizing that licensees are "are subject to Arizona's specific three-tier system and regulations. These include, but are not limited to, on-site liquor inspections, investigation of complaints, covert underage buyer programs, audits and other financial inspections, and investigation of records to determine compliance with Arizona liquor laws."). Nor was it "clearly established" at any relevant time that an officer was prohibited by federal law or the United States Constitution from communicating the results of such inspection—which were clearly relevant to the right to keep a provisional liquor license—to the state agency responsible for issuing and policing that license.

Thankfully, no federal right precludes Detective Bailey from investigating whether a liquor licensee failed to disclose that the establishment was being managed, controlled, or operated by a felon—instead, Arizona law criminalizes such conduct. *See* A.R.S. § 4-210(A)(3), (8), (11). Therefore, rather than expect that his conduct violated clearly established federal law, Detective Bailey reasonably assumed his conduct was constitutionally permissible. *Grossman*, 33 F.3d at 1209. Similarly, no "clearly established" right precluded Detective Bailey from investigating the repeated incidents of violence in and around the

establishment. Instead, Arizona law expressly ratified and approved such an investigation. *See* A.R.S. § 4-210(A)(1). Finally, Plaintiff can identify no authority that established a "federal right" preventing Detective Bailey from communicating with Plaintiffs' landlord or rejecting a "Public Safety Plan."

For these reasons, the Court should conclude that Detective Bailey is entitled to qualified immunity and dismiss all federal claims asserted against him.

**B.     In any event, Plaintiffs have not established an equal protection claim.**

The Complaint alleges *only* an Equal Protection Claim predicated on the Plaintiffs' purported race and gender through Section 1983. (Doc. 1 at 13-14.) While Plaintiffs' Complaint is not artfully crafted, and despite the fact it is sometimes difficult to decipher, the limited federal claims asserted by Plaintiffs are clear that they are entirely limited to an Equal Protection claim. "To establish a § 1983 equal protection violation, the plaintiff[ ] must show that the defendants, acting under color of state law, discriminated against [him] as [a] member[ ] of an identifiable class and that the discrimination was intentional." *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003) (citations omitted); *Joyce v. City & Cty. of San Francisco*, 846 F. Supp. 843, 858 (N.D. Cal. 1994) (citing *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 271–72 (1979)) ("Predicate to an equal protection clause violation is a finding of governmental action undertaken with an intent to discriminate against a particular individual or class of individuals.").

As set forth by the Supreme Court:

> "Discriminatory purpose" . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected . . . a particular course of action *at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group*.

*Feeney*, 442 U.S. at 279 (footnotes and citation omitted and emphasis added); *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) ("Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." (citation and internal

- 10 -
4873-1033-4315 v11 [53387-19]

quotation marks omitted)); *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998) (explaining that the Ninth Circuit has "held that § 1983 claims based on Equal Protection violations must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent.").

Importantly, the plaintiff must demonstrate that the defendants acted with intent or purpose to discriminate against the Plaintiff based upon membership in a protected class, **and** that the Plaintiff was treated differently from persons similarly situated. *See Baron*, 152 F.3d at 1194; *Lam v. City and Cnty. of San Francisco*, 868 F. Supp. 2d 928, 951 (N.D. Cal. 2012), *aff'd*, 565 Fed. Appx. 641 (9th Cir. 2014). A Plaintiff may make such a showing by demonstrating: (1) that the Plaintiff was treated differently from other similarly situated actors; (2) this unequal treatment was based on an impermissible classification; (3) that the Defendant acted with discriminatory intent in applying this classification; (4) and that the "Plaintiff suffered injury as a result of the discriminatory classification." *Lam*, 868 F. Supp. 2d at 951. (internal quotation marks omitted).

Here, Plaintiffs' Complaint fails to plead the bare minimum required for an Equal Protection claim. There are no allegations of fact regarding intent; indeed, there is only a single utterance of any derivation of the word "intend." The Complaint does not allege *at all* that either Officer Smith or Detective Bailey "acted with intent or purpose to discriminate against Plaintiff based upon membership in a protected class." *Baron*, 152 F.3d at 1194. Nor does the Complaint allege that Detective Bailey or Officer Smith treated Plaintiffs "differently from persons similarly situated. *Id*. Indeed, Plaintiffs have not pled *the existence of* "similarly situated" liquor licensees who were treated differently than Plaintiffs.

In other words, Plaintiffs have simply not alleged any facts demonstrating the existence of necessary elements sufficient to support an Equal Protection claim. *Id*.

### C. Plaintiff's *Monell* claim (Count Three) fails.

Plaintiffs also lash out at the City, complaining that the City has violated their constitutional rights consistent with *Monell v. Department of Social Services*, 436 U.S. 658 (1978). "[T]o be liable under *Monell,* Plaintiffs must show: (1) that Plaintiffs were deprived of a constitutional right; (2) that the City had a policy; (3) that the policy is deliberately indifferent to the Plaintiffs' constitutional right; and (4) that the policy was the moving force behind the constitutional violation." *Snyder v. City & Cnty. of San Francisco*, 288 Fed. Appx. 346, 348 (9th Cir. 2008) (citing *Oviatt v. Pearce,* 954 F.2d 1470, 1474 (9th Cir.1992). Here, Plaintiffs' Complaint does not establish any of the foregoing elements.

First, as demonstrated above, Officer Smith and Detective Baily did not "deprive" Plaintiffs "of a constitutional right." *Id*. They investigated and enforced the law, which Plaintiffs have *admitted* violating. For this reason alone, Plaintiffs' *Monell* claim should be dismissed; and the Court need engage in any further analysis. However, even if the absence of any derivative liability were not sufficient, Plaintiffs have also failed to demonstrate the remaining required elements.

Indeed, Plaintiffs have not even adequately articulated the purported "policy" or "custom" implemented by the City. To survive a Rule 12 motion, a Complaint asserting a *Monell* claim must: (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively;" and (2) "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *A.E. ex rel. Hernandez v. Cnty. Of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). Stated another way, Plaintiffs must allege "*specific* policies, practices, or customs contributed to the alleged constitutional violations and what specific constitutional violations occurred." *Jensen v. City of Garden Grove*, 2021 WL 3579415, at *3 (C.D. Cal. Apr. 22, 2021) (emphasis in original).

1      Here, Plaintiffs' Complaint fails. Rather than articulate *specific* policies implemented by the City, the Complaint contains a laundry list of mere *possibilities*: "Defendant City of Scottsdale, through Wathall and SPD, *has either* failed to properly hire, supervise, discipline, monitor, terminate and/or train its employees *and/or* failed to establish policies and procedures that would prevent individuals that were not fit for duty from being hired, employed, employed without supervision and retained as a police officer, within the SPD." (Doc. 1 at ¶ 82) (emphasis added). Missing from that formless palaver are any alleged "facts." *Id.* To be sure, Plaintiffs' *Monell* claim contains precisely the type of "'formulaic recitation of the elements' of a constitutional discrimination claim" that the Court cannot credit. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

    Because Plaintiffs have failed to sufficiently articulate any "policy," they have not plausibly alleged that any such policy was the subject of the City's deliberate indifference to their rights or that the policy directly led to any constitutional deprivation. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146 (9th Cir. 2012) ("Under *Monell*, a plaintiff must also show that the policy at issue was the "actionable cause" of the constitutional violation, which requires showing both but for and proximate causation."). Again, Plaintiffs have alleged no actual facts demonstrating a causal link between any purported policy or custom and any alleged harm. Instead, the undeniable fact is that any loss of either Loyalty Lounge's liquor license or any revenue was due to the admitted violations by Plaintiffs of Arizona's liquor laws. Simply put, Plaintiffs have not adequately pled a *Monell* claim.

### D.     Plaintiff's gross negligence claim (Count Four) fails.

    Plaintiffs next assert that Defendants gave information to the Department of Liquor that was "false" and this gives rise to a claim for gross negligence.[9] (Doc. 1 at ¶ 89). One of the

---

[9] Plaintiffs' gross negligence claim is only three conclusory paragraphs, and it is unclear what they allege constitutes the grossly negligent conduct. To the extent that claim is predicated upon the provision of information to the Department of Liquor, however, that testimony is privileged for the same reasons discussed in Section II.F., *infra*.

- 13 -

4873-1033-4315 v11 [53387-19]

essential elements of a gross negligence claim under Arizona law is the existence of a duty, *i.e.* "an 'obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Gipson v. Casey*, 214 Ariz. 141, 143 ¶ 10 (2007) (quoting *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 354 (1985)). The question of duty is always a "threshold issue" and a question of law for the Court. *Id.* at 143 ¶¶ 9, 11. Whether a duty exists is to be determined prior to any case-specific facts are considered and instead must arise from "special relationships based on contract, family relations, or conduct undertaken by the defendant." *Id.* at 145 ¶¶ 18, 21.

Here, Plaintiffs point to absolutely no special relationship that would support the imposition of a duty as a matter of law. Officer Smith and Detective Bailey had no relationship with the Plaintiffs, but were instead investigating them for serial and flagrant violations of state and local law. It is well settled that, absent some promise to take action, government officials owe no general duty to the public writ large. *See, e.g.*, *Hogue v. City of Phoenix*, 240 Ariz. 277, 281 ¶ 12 (App. 2016) ("Arizona courts have found that police conduct has created a special relationship giving rise to a duty only in specific circumstances, for example when police take a 911 call about a potential threat and tell the caller that they will take action on that information."). There is no case supporting the curious construct that an officer or government agent investigating and reporting on the (admittedly) illegal activities of persons and establishments owe a duty to those suspects. Indeed, those courts that have considered such a bizarre construct have reached the opposite conclusion. *See, e.g.*, *Otero v. Warnick*, 614 N.W.2d 177, 182 (Mich. App. 2000) (explaining that investigating witness owed no duty to suspect because their interests were unquestionably adverse); *Lahm v. Farrington*, 90 A.3d 620, 623 (N.H. 2014) (holding that police officer owes no duty of investigation to suspect). Plaintiffs cannot establish the requisite duty, and their gross negligence claim fails.[10]

---

[10] The only plausible basis for urging the state law torts against the City appears to be based on a theory of vicarious liability. Thus, the state law claims against the City fail for the same reasons they fail against Detective Bailey and Officer Smith.

- 14 -

### E. Plaintiffs' interference with contract claim (Count Five) fails.

Plaintiffs' claims that the City and Detective Bailey somehow interfered with a contract or business expectancy likewise fails for failure to identify the relationship at issue. Plaintiffs must plead and identify a "specific relationship with which the defendant interfered." *Dube v. Likins*, 216 Ariz. 406, 414 ¶ 19 (App. 2007). To "state a claim for tortious interference upon which relief may be granted, 'there must be a colorable economic relationship between the plaintiff and a third party with the potential to develop into a full contractual relationship.'" *Id.* (quoting *Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n*, 148 P.3d 1179, 1217–18 (Haw. 2006)). "[T]o prevail on a claim of tortious interference with a business relationship, when the relationship is prospective, there must be a reasonable assurance that the contract or relationship would have been entered into but for the interference." *S. Union Co. v. Sw. Gas Corp.*, 180 F. Supp. 2d 1021, 1048 (D. Ariz. 2002) (internal quotation and citation omitted).

The Complaint fails to plead any business relationship that the City and Detective Bailey could have interrupted. To the extent that Plaintiffs claim those Defendants interrupted their "lease with the existing landlord," Plaintiffs have failed to articulate the terms of any contract with their landlord, and certainly have not alleged that the landlord terminated the lease, let alone because of Defendants' purported conduct. (Doc. 1 ¶¶ 46, 70, 92). *Safeway Ins. Co. v. Guerrero*, 210 Ariz. 5, 10 (2005) (requiring both breach and damages for a prima facie pleading of interference with an existing contract). The only other basis for this claim that Plaintiffs articulate is that Defendants caused amorphous "buyers to reevaluate the case and caused the sales not to go through." (Doc. 1 ¶ 93). This allegation verges on unintelligible and is comically insufficient. Plaintiffs fail to identify a single buyer, explain the details of any contract or concrete negotiation with said buyer, articulate the wrongful conduct Defendants allegedly engaged in that caused the negotiations to terminate, or even allege Defendants were aware of such a "contract." Count Five should be dismissed. *Id*.

### F. Plaintiffs' abuse of process claim (Count Six) fails.

Plaintiffs' abuse of process claim fares no better for two independent reasons. First, even assuming that proceedings before the Department of Liquor could support a claim for abuse of process, the mere provision of information is not "process" that can support the tort. *Goldman v. Sahl*, 248 Ariz. 512, 531 (App. 2020). The mere request for another body to take action, be it the police, prosecutor, state bar, or other administrative board is not "process" under Arizona law. *Id.* at 531 ¶ 64 (holding that, while actions taken inside a bar proceeding can theoretically support the tort, the mere filing of a complaint does not). Here, the provision of information by Detective Bailey to the Department of Liquor is no different than a bar charge or police report in that it invited that board to do something (not to mention Plaintiffs actually consented to the Department of Liquor actions).

Second, and more fundamentally, Detective Bailey is entitled to testimonial immunity for the provision of information. Cases are legion explaining that "[a] statement made in the course of a judicial hearing is absolutely privileged as long as it bears some relation to the subject judicial proceeding." *Drummond v. Stahl*, 127 Ariz. 122, 125 (App. 1980). Thus, even if Detective Bailey's provision of information is within something resembling a judicial process such that it is a "process," and it is not, anything he said or did within the context of that proceeding as a fact witness cannot give rise to civil liability. *Id.*

### G. Plaintiff's claims based on reporting to the Department of Liquor are barred by the *Noerr-Pennington* doctrine.

Finally, to the extent that Plaintiffs' claims are predicated upon the provision of information by Officer Smith and Detective Bailey to the Department of Liquor, such claims cannot survive as a matter of law. As noted above, Plaintiffs agreed via binding consent decrees that the facts provided to the Department of Liquor were true. It is well established that government officials have immunity for the provision of accurate information to other branches of government under the *Noerr-Pennington* doctrine, including administrative bodies. *See Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 642–43 (9th Cir. 2009); *Kottle v.*

- 16 -

*Nw. Kidney Centers*, 146 F.3d 1056, 1059 (9th Cir. 1998). That immunity specifically bars statutory liability under 42 U.S.C. § 1983. *Swallow v. Torngren*, 789 Fed. App'x 610, 611 (9th Cir. 2020) (citing *Kearney*, 590 F.3d at 643–48). Although the Ninth Circuit has not yet addressed the question, other courts of appeal have concluded that the doctrine also bars state common law claims that also burden the rights of petition the doctrine is designed to protect. *See, e.g.*, *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128 (3rd Cir. 1999).

To determine whether *Noerr-Pennington* immunity applies, the Court is directed to consider three questions: (1) whether the pending lawsuit imposes a burden on petitioning rights; (2) whether the allegedly wrongful conduct constitutes protected petitioning activity; and (3) whether the law at issue can be interpreted in a manner that avoids the burden on those petitioning rights. *B&G Foods N.A. v. Embry*, 29 F.4th 527, 535 (9th Cir. 2022) (citing *Kearney*, 590 F.3d at 644).

Here, it is clear that Defendants were providing information to a governmental body, the Department of Liquor, for purposes of petitioning that body to take action. The pending lawsuit would unquestionably burden that petitioning activity, and there is no manner to interpret either the state or federal claims to avoid that burden. Defendants' conduct is, therefore, absolutely immune from liability under Noerr-Pennington. *Kearney*, 590 F.3d at 638. It makes no difference that the information was provided in an administrative, as opposed to traditional judicial, proceeding. *Kottle*, 146 F.3d at 1059–60.

### III.  CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint fails to state any claims as a matter of law, and the Complaint should be dismissed with prejudice.

4873-1033-4315 v11 [53387-19]

RESPECTFULLY SUBMITTED this 25th day of August, 2023.

DICKINSON WRIGHT, PLLC

By: */s/ Scot L. Claus*
    Scot L. Claus
    Vail C. Cloar
    Holly M. Zoe
    1850 N. Central Avenue, Suite 1400
    Phoenix, Arizona 85004
    ***Attorneys for Defendants***

**CERTIFICATE OF COUNSEL**

Pursuant to Local Rule 12.1(c), I certify that I personally consulted with Plaintiffs' counsel on July 10, 2023 regarding this Motion for Judgment on the Pleadings, having outlined the bases for such motion in writing on July 5. During our consultation, Plaintiffs' counsel indicated that she did not wish to attempt to amend the Complaint to address or cure the deficiencies in that Complaint, and instead insisted that Defendants "would have to go ahead and file" their Motion.

By: */s/ Scot L. Claus*
    Scot L. Claus

**CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2023, I electronically transmitted the attached document to the Clerk of the Court using the CM/ECF system, and which will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

By: */s/ Sheila Rath*

4873-1033-4315 v11 [53387-19]