Scot L. Claus (#014999)
Vail C. Cloar (#032011)
Holly M. Zoe (#033333)
DICKINSON WRIGHT PLLC
1850 N. Central Ave., Suite 1400
Phoenix, Arizona 85004-4568
Telephone: (602) 285-5000
Facsimile: (844) 670-6009
[Firm Email:  courtdocs@dickinsonwright.com]
*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| June Durr, an individual and Loyalty Restaurant & Lounge LLC dba Loyalty Lounge, an Arizona Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>City of Scottsdale, a municipal entity; Christian Bailey, an individual acting under the color of law; Stephen Smith, an individual and John and/or Jane Doe I-X, individual(s) acting under the color or law,<br><br>Defendants. | Case No.: 2:23-cv-00752-SMB<br><br>**REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**(Oral Argument Requested)** |

Defendants sought judgment on the pleadings because the operative Complaint (Doc. 1) plainly demonstrates that Defendants Bailey and Smith are entitled to qualified immunity. Moreover, Defendants established that the Complaint failed to plead facts sufficient to state any cognizable civil rights claim against any Defendant, failed to identify any "policy, practice or custom" constituting a constitutional violation, and failed to state cognizable state law claims.

Although Plaintiffs filed what they deem a "Response" (Doc. 15), they offered no substance. To call Plaintiffs' Response "half-hearted" would be to misuse the word "half." Their regurgitation of simplistic legal platitudes is unavailing and cannot mask Plaintiffs'

failure to meaningfully address the following dispositive facts and legal arguments presented in in Defendants' Motion for Judgment on the Pleadings (Doc. 14):

- Defendants do not dispute that the Arizona Department of Liquor, **not the City of Scottsdale nor any of its staff**, conducts "restaurant audits" to "ensure that [such purported restaurants] maintain a 40:60 food-to-liquor sales ratio required by Title 4f." *See* Department of Liquor, *Restaurant Audits*, https://azliquor.gov/restaudit.cfm; A.R.S. § 4-213(A).

- Plaintiffs *admitted* that they had engaged in conduct which constituted "violations of ARS § 4-205.02(M) and 4-213(C)((1)." (Doc. 14 at Ex. A).

- Plaintiffs *voluntarily surrendered* their liquor license based on their admitted violations of Arizona's liquor laws. (*Id.*).

- Plaintiffs entered into a binding Consent Agreement in which the Plaintiffs admitted, and the Arizona Department of Liquor concluded in Order 000366–21, that Loyalty Lounge had allowed an unidentified person to act as a manager or controlling person of the licensee in violation of state law. (Doc.14 at Ex. C).

- Plaintiffs do not dispute—and do not even address—that to properly state a § 1983 Equal Protection claim, they were required to "show that the Defendants, acting under color of state law, discriminated against [them] as a member of an identifiable class ***and that the discrimination was intentional***." *Flores v. Morgan Hill Unified School District*, 324 F.3d 1130, 1134 (9th Cir. 2003) (citations omitted) (emphasis added). Plaintiffs cannot dispute that they have not alleged *any* intent on behalf of *any* Defendant to discriminate.

- Nor did Plaintiffs address their abject failure to allege facts demonstrating that they were treated differently from persons "similarly situated." *See Lam v. City and Cnty. of San Francisco*, 868 F. Supp. 2d 928, 951 (N.D. Cal. 2012), *aff'd*, 565 Fed. Appx. 641 (9th Cir. 2014). Indeed, Plaintiffs concede that Plaintiffs' landlord—who is *not* alleged be a "black woman"—was *also cited* for the "business operating as a bar" without the requisite conditional use permit. (Doc. 14 at Ex. D, Doc. 1 at ¶ 36).

- Plaintiffs completely ignore that in order to maintain any kind of negligence claim, the existence of a duty under Arizona law must be based upon a "special relationship" that is predicated upon a "contract, family relations, or conduct undertaken by the Defendant." *See Gipson v. Casey*, 214 Ariz. 141, 145 ¶¶18, 21 (2007). Neither governmental entities nor their employees owe a general duty to the public. *See, e.g., Hogue v. City of Phoenix*, 240 Ariz. 277, 281 ¶12 (App. 2016).

- Plaintiffs failed to identify the requisite "specific relationship with which the Defendants" purportedly "interfered" that is necessary to support their intentional interference claim. *Dube v. Likins*, 216 Ariz. 406, 414 ¶ (App. 2007). Nor have Plaintiffs alleged anything constituting a breach of any agreement. *See Safeway Ins. Co. v. Guerrero*, 210 Ariz. 5, 10 (2005) (recognizing that the requisite elements of a tortious interference claim includes "intentional interference inducing or causing a breach.").

- With respect to their "abuse of process" claim, Plaintiffs do not (and cannot) dispute that an administrative body, such as the Arizona Department of Liquor, does not constitute a "judicial" entity. *See Goldman v. Sahl*, 248 Ariz. 512, 531 (App. 2020). Nor do Plaintiffs address the *Noerr-Pennington* doctrine, which immunizes government officials for the provision of accurate information to other branches of the government, including administrative bodies. *Swallow v. Torngren*, 789 Fed. App'x 610, 611 (9th Cir. 2020).

Plaintiffs' total failure—and their inability—to address the foregoing should both begin and end the Court's analysis. But even considering the substance of Plaintiffs' Response, it remains clear that judgment on the pleadings should be entered in favor of Defendants.

**A.    The Court must strike extrinsic evidence and arguments relying on same.**

All but conceding the failure of their Complaint to adequately plead their claims, Plaintiffs attempt to bolster their claims through the introduction of excerpts from a deposition purportedly taken in a separate civil case. (*See* Doc. 15 at 10, Ex. A). That attempt is wholly improper. Indeed, it is axiomatic that "[i]n considering a motion for judgment on the

pleadings, the Court cannot consider evidence outside the pleadings unless the Court treats the motion as a motion for summary judgment." *Xcentric Ventures, LLC v. Borodkin*, 934 F. Supp. 2d 1125, 1134 (D. Ariz. 2013). Instead, the appropriate remedy is to disregard the extrinsic evidence and any arguments relying on such evidence. *Payne v. Arpaio*, No. CV09-1195-PHX-NVW, 2009 WL 3756679, at *1 n.1 (D. Ariz. Nov. 4, 2009).

Here, Plaintiffs do not attempt to excuse their reliance upon deposition excerpts from a different civil case pending in a different court.[1] Plaintiffs certainly do not demonstrate (or even argue) that the Court may properly take judicial notice of such deposition transcripts. For this reason alone, the Court should refuse to consider Exhibit A attached to Plaintiff's Response. *Id*.

Beyond being impermissible, the deposition excerpts are not admissible. They constitute rank hearsay pursuant to Rule 801 of the Federal Rules of Evidence, and are inadmissible pursuant to Rule 802 of the Federal Rules of Evidence.[2] Accordingly, even if the Court wished to transmute the Motion into one for summary judgment, it could not consider Plaintiffs' Exhibit A. *See Cherewick v. State Farm Fire & Cas.*, 578 F. Supp. 3d 1136, 1157 (S.D. Cal. 2022) ("[P]apers opposing a motion for summary judgment may also not be supported by hearsay.").

---

[1] Moreover, Defendants are not parties to that litigation and therefore have no access to, and no opportunity to examine, the witness whose testimony Plaintiffs attempt to place before the Court. Defendants have never even seen the excerpted transcript in its entirety. This highlights the manifest impropriety—and patent unfairness—of Plaintiffs' attempt to introduce this "evidence." Indeed, it is especially improper when the Court has **expressly stayed discovery** pending the resolution of this Motion. (Doc. 13.)

[2] Even beyond the procedural and hearsay issues, the deposition excerpts would be inadmissible because Plaintiffs also fail to establish foundation for the proffered testimony. The testimony comes from "Blen Shipp" who Plaintiffs urge, without any evidentiary support, is the "owner/landlord." (Doc. 15 at 10.) Yet, Loyalty's landlord was "Craftsman's Table LLC." (Doc. 14-1 at Ex. D.) Plaintiffs offer no foundation for the relationship, if any, between Shipp and Craftsman's Table LLC.

- 4 -

**B.     Plaintiffs failed to address, and have not met, their burden of proof regarding qualified immunity (Counts One and Two).**

As this Court recently observed "[o]nce the defense of qualified immunity is raised by the defendant, the Plaintiff bears the burden of showing that the rights allegedly violated were 'clearly established.'" *Maples v. Pinal County*, 453 F. Supp. 3d 1314, 1320 (D. Ariz. 2020) (quoting *LSO Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000)). "Qualified immunity does not hinge on whether officials acted in accordance with abstract norms of morality and human decency." *Id*. Rather, public officials must have "had fair notice, *derived from existing case law*, that their conduct was unconstitutional." *Id.* (emphasis added). Indeed, the "farther afield existing precedent lies from the case under review, the more likely it will be that the officials' acts fall within that vast zone of conduct that is perhaps regrettable but is at least arguably constitutional. So long as even that much can be said for the officials, they are entitled to qualified immunity." *Hamby v. Hammond*, 821 F.3d 1085, 1095 (9th Cir. 2016).

In *Maples*, this Court determined that the public officials were entitled to qualified immunity because the Plaintiffs had "not identified any case that would have provided fair warning to Defendants that their actions were unconstitutional." *Maples*, 453 F. Supp. 3d at 1321. That same failure should lead to the same result here.

Indeed, Plaintiffs cite only two cases for the vague and abstract notion that one of the Plaintiffs had a "right to be free from racial discrimination" and "gender discrimination." (Doc. 15 at 11).³ But Plaintiffs' reference to vague and abstract constitutional rights is woefully inadequate and cannot overcome the individual Defendants' entitlement to qualified immunity. Indeed, as noted in the Motion, the "Supreme Court has 'repeatedly told Courts—

---

³ Tellingly, Plaintiffs do not cite any authority standing for the proposition that Loyalty Lounge, LLC, can appropriately be imbued with either a "race" or "gender" for the purposes of a § 1983 Equal Protection claim. That failure is entirely dispositive.  Indeed, because Plaintiffs have failed to identify any case identifying any "clearly established constitutional right" held by Loyalty Lounge, LLC, the individual Defendants are entitled to qualified immunity with respect to any and all claims asserted by that Plaintiff. *Pauly*, 580 U.S. at 79.

and the Ninth Circuit in particular—not to define clearly established rights at a high level of generality.'" *S.B. v. County of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017) (quoting *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015)). Plaintiffs' articulated rights—to be free from racial and gender discrimination—is a model of rights defined "at a high level of generality." *Id*. To constitute a "clearly established" constitutional right which was predicated on "fair notice" to the official in question, the Plaintiff must identify pre-existing authority sufficiently "'particularized' to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In other words, to meet *their burden*, Plaintiffs were required to point to authority which established that the "violative nature of the *particular* conduct [was] clearly established." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).

On this score, Plaintiffs have entirely failed. They cite *Washington v. Davis*, 426 U.S. 229, 239–41 (1976). (Doc. 15 at 11). However, the "particular conduct" alleged in *Washington* bears no resemblance to the facts of this case. There, black police officers and applicants challenged as racially discriminatory the application, recruiting, and promotion procedures for the District of Colombia's police department. 426 U.S at 232–33. *Washington* did not involve liquor licenses, detectives, code enforcement officers, or regulatory administrative bodies whatsoever—much less **admitted violations** of state law. *Id*. Therefore, the existence of *Washington v. Davis* did not, as a matter of law, provide "fair notice" to the Defendants in this case that their alleged conduct violated a federal right. *Mullenix*, 136 S.Ct. at 308.

In point of fact, *Washington* did not even include the same legal theories or claims involved here. The *Washington* plaintiffs **did not bring** an Equal Protection claim pursuant to 42 USC § 1983. Instead, those plaintiffs pursued a claim for violations of the "due process clause" of the Fifth Amendment "under 42 U.S.C. § 1981." *Id.* at 2045. In other words, from both a factual and legal perspective, *Washington* is entirely inapposite to the case at hand, and

1  Plaintiff's reliance upon *Washington* does not demonstrate the existence of a "clearly
2  established" right sufficient to evade qualified immunity with respect to Count One.
3    The only case cited by Plaintiffs to support Count Two is *Personnel Administrator of*
4  *Massachusetts v. Feeney*, 442 U.S. 256 (1979). (Doc. 15 at 11). Again, however, Plaintiffs
5  have failed to meet their burden. The only question in *Feeney* was whether a state hiring
6  statute, which granted a preference to veterans, discriminated against female nurses. *Id*. at 259.
7  Nothing in *Feeney* involved liquor licenses, liquor boards, city detectives, city code
8  enforcement officers, zoning ordinances, or anything similar to the "particular conduct"
9  alleged in this case.
10   Plainly, Plaintiffs have failed to identify the "case where an officer acting under similar
11  circumstances . . . was held to have violated" the United States Constitution. *Pauly*, 580 U.S.
12  at 79. Because Plaintiffs have failed to carry their burden, the individual Defendants are
13  entitled to qualified immunity as a matter of law as to Counts One and Two. *Id*.
14   **C.   Plaintiffs'** ***Monell*** **claim (Count Three) is fatally flawed**.
15   "[T]o be liable under *Monell,* Plaintiffs must show: (1) that Plaintiffs were deprived of a
16  constitutional right; (2) that the City had a policy; (3) that the policy is deliberately indifferent
17  to the Plaintiffs' constitutional right; and (4) that the policy was the moving force behind the
18  constitutional violation." *Snyder v. City & Cnty. of San Francisco*, 288 Fed. App'x 346, 348
19  (9th Cir. 2008) (citing *Oviatt v. Pearce,* 954 F.2d 1470, 1474 (9th Cir. 1992)). Here, Plaintiffs
20  all but concede that their Complaint alleges none of those requisite elements. (Doc. 15 at 12-
21  13). And to survive a Rule 12 motion, a Complaint asserting a *Monell* claim must point to
22  "*specific* policies, practices, or customs contributed to the alleged constitutional violations and
23  what specific constitutional violations occurred." *Jensen v. City of Garden Grove*, 2021 WL
24  3579415, at *3 (C.D. Cal. Apr. 22, 2021) (emphasis in original).
25   Again, Plaintiffs simply failed. They attempt to regurgitate the vague and amorphous
26  allegations of their Complaint, but do not identify any *specific policy* allegedly implemented

by the City. Nor have they adequately alleged "deliberate indifference" on the part of the City. Instead, as they have done throughout the pendency of this case, Plaintiffs apparently confuse a *state* regulatory agency with the City. They claim that they "sent a letter to the liquor board [sic]" in which they purportedly informed that agency that "there were false allegations going around." (Doc. 15 at 12-13). However, the City of Scottsdale is ***not*** "the liquor board [sic]." Indeed, nothing in the Complaint or the Response remotely suggests that an official policy maker for the City of Scottsdale has *ever seen* the purported letter.

In other words, Plaintiffs do not dispute that they have failed to plausibly allege that any specific City policy was the subject of the City's deliberate indifference to Plaintiffs' rights or that the policy directly led to any constitutional deprivation. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146 (9th Cir. 2012) ("Under *Monell,* a plaintiff must also show that the policy at issue was the "actionable cause" of the constitutional violation, which requires showing both but for and proximate causation."). Because Plaintiffs have not adequately pled a *Monell* claim, Count Three should be dismissed with prejudice.

**D.     Plaintiffs' gross negligence claim (Count Four) must be dismissed.**

As noted above, Plaintiffs have not disputed that, under Arizona law, the existence of a duty must be based upon a "special relationship" that is predicated upon a "contract, family relations, or conduct undertaken by the Defendant." *See Gipson v. Casey*, 214 Ariz. 141, 145 ¶¶ 18, 21 (2007). Nor do Plaintiffs dispute that, under Arizona law, neither governmental entities nor their employees owe a general duty to the public. *See, e.g.*, *Hogue v. City of Phoenix*, 240 Ariz. 277, 281 ¶ 12 (App. 2016). Instead, Plaintiffs purport to quote *Landeros v. City of Tucson*, 171 Ariz. 474 (App. 1992) to support their gross negligence claim, but *Landeros* does not contain the quotation for which it is purportedly cited. (Doc. 15 at 13). Bluntly, Plaintiffs are misleading the Court.

Furthermore, *Landeros* actually stands for the proposition that to properly plead a gross negligence claim, a plaintiff must allege plausible facts demonstrating that a defendant

engaged in conduct that was "flagrant and evinces a lawless and destructive spirit." 171 Ariz. at 475. *Landeros* certainly does not establish a duty predicated upon a "special relationship" between either a detective or a code enforcement officer that could lead to a cognizable gross negligence claim against the individual Defendants. *Id*.

With respect to the City of Scottsdale, Plaintiffs argue that the City is liable for gross negligence (despite the absence of any alleged duty) "under vicarious liability [sic] and under the respondeat superior doctrine." (Doc. 15 at 13). In making this argument, Plaintiffs again flatly ignore the law. In Arizona, when the acts of a municipality are "done in the exercise of a corporate franchise conferred upon the [municipal] corporation for the public good, and not for private corporate advantage, the corporation is not liable for the consequences of such acts on the part of its officers and servants." *Smyser v. City of Peoria*, 215 Ariz. 428, 435 ¶ 20 (App. 2007) (quoting Eugene McQuillin, *The Law of Municipal Corporations* § 53.23 at 384–85 (3d ed. 2002)). Here, the Complaint expressly alleges that Defendants Bailey and Smith were "at all times . . . [acting] within the scope of [their] employment." (Doc. 1 at ¶¶ 6, 7). Accordingly, as a matter of law, the City **cannot be** vicariously liable for the conduct of Defendants Bailey and Smith. *Id*. Count Four should be dismissed with prejudice.

**D.   Plaintiffs' interference with contract claim (Count Five) suffers from myriad deficiencies.**

Plaintiffs' Response has failed to point to any particular contract with which any Defendant interfered, thereby conceding that Count Five should be dismissed. The law required Plaintiffs to plead and identify a "specific relationship with which the defendant interfered." *Dube v. Likins*, 216 Ariz. 406, 414 ¶ 19 (App. 2007). Moreover, they were required to allege facts demonstrating that, as a result of the tortious conduct of Defendants, a prospective contract was not executed or an existing contract was breached. *Id*.

As the contracts purportedly interfered with, Plaintiffs point to (i) a lease with their landlord and (ii) argue they "were in the process of selling the business" to unidentified "buyers." But Plaintiffs ignore the requisite elements for an interference claim. To the extent

that Plaintiffs now claim that Defendants interfered with the lease itself, Plaintiffs certainly have not alleged in their Complaint that their landlord "breached" or terminated their lease as a result of any conduct of the Defendants. *Guerrero*, 210 Ariz. at 10 (the requisite elements of a tortious interference claim include "intentional interference inducing or causing a breach.") Nor do Plaintiffs address in the Response their utter failure to allege facts demonstrating any "intent" on the part of any Defendant to interfere with anything. *Id*.

With respect to the purported attempt to sell the business, Plaintiffs' arguments are even more flimsy. They plead no facts (and the Response offers no facts) identifying putative buyers or establishing the existence of a purchase agreement (or even that such an agreement was being negotiated). They have not alleged that any Defendant knew of the existence of any such unidentified buyer, let alone that a Defendant "intended" to interfere with a purchase. *Dube*, 216 Ariz. at 411, ¶ 8 ("A plaintiff asserting a claim for tortious interference must allege the existence of a valid contractual relationship or business expectancy; the interferer's knowledge of the relationship or expectancy; intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted.") (internal quotation marks omitted). And Plaintiffs have failed to allege that any such unidentified "buyer" breached or failed to consummate any agreement. *Id*. Simply put, Plaintiffs have not alleged *any* of the requisite elements necessary to support a tortious interference claim. Therefore, Count Five should be dismissed with prejudice.

**E.   Plaintiffs' abuse of process claim (Count Six) fails.**

Plaintiffs' abuse of process claim is nonsensical and fundamentally flawed. Pursuant to Arizona law, "a valid claim for abuse of process requires well-pleaded facts alleging that the Defendant used a *judicial process* during civil litigation or criminal prosecution." *Fappani v. Bratton*, 243 Ariz. 306, 309 ¶ 10 (App. 2017) (emphasis in original). Transmitting emails or correspondence to the Arizona Department of Liquor in connection with a regulatory

investigation does **not** constitute the use of a "judicial process" as a matter of law. *Id*. Indeed, the *Fappani* court specifically recognized that "contacting law enforcement to complain about . . . conduct is not use of a judicial process." *Id*. at 310 ¶ 12.

Though Plaintiffs claim that "Defendant Bailey did in fact testify" (Doc. 15 at 15), the Complaint does not allege *any* proceeding in which such testimony was given. In any event, it is highly dubious that testimony—even in a judicial proceeding—constitutes "process." 3 Dan B. Dobbs et al., *The Law of Torts* § 594 (2d ed. 2011) (noting that "process" includes a summons, subpoena, garnishment, writ of replevin, arrest warrant, or "other orders directly affecting obligations of persons or rights in property").[4] Furthermore, Plaintiffs do not identify any "process" purportedly used by either Officer Smith or the City.

Nor do Plaintiffs dispute or address Defendants' arguments regarding the *Noerr-Pennington* Doctrine (Doc. 14 at 16-17). Therefore, Plaintiffs should be deemed to have conceded the application of such doctrine here. *Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 n. 7 (N.D. Cal. 2013) (citing *In re Online DVD Rental Antitrust Litig.,* No. 09–2029 PJH, 2011 WL 5883772, at *12 (N.D. Cal. Nov. 23, 2011) ("absent unusual circumstances, failure to respond to argument on merits viewed as grounds for waiver or concession of the argument.") (internal quotation marks omitted)). Plaintiffs' abuse of process claim (Count Six) should be dismissed with prejudice.

## CONCLUSION

Plaintiffs have admitted violating the law. They admit they surrendered their liquor license as a result of those admitted violations. Their attempt to foist liability on the City of Scottsdale and its employees for their admitted violations cannot withstand scrutiny. Instead, for the reasons stated above and in the Motion, Plaintiffs' Complaint should be dismissed in its entirety with prejudice.

---

[4] But, of course, even if testimony constituted "process," Plaintiffs do not dispute that Detective Bailey would be entitled to testimonial immunity. *Drummond v. Stahl*, 127 Ariz. 122, 125 (App. 1980).

RESPECTFULLY SUBMITTED this 14th day of September, 2023.

DICKINSON WRIGHT, PLLC

By: */s/ Vail C. Cloar*
    Scot L. Claus
    Vail C. Cloar
    Holly M. Zoe
    1850 N. Central Avenue, Suite 1400
    Phoenix, Arizona 85004
    ***Attorneys for Defendants***

# CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2023, I electronically transmitted the attached document to the Clerk of the Court using the CM/ECF system, and which will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

By: */s/ Vail C. Cloar*

4893-2941-8879 v1 [53387-19]