**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| June Durr, et. al., | No. CV-23-00752-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Scottsdale. et. al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion for Judgment on the Pleadings. (Doc. 14.) Plaintiffs filed a response (Doc. 15), to which Defendants replied (Doc. 16). The Court held oral argument on March 15, 2024. After considering the parties' arguments and relevant case law, the Court will grant the Motion.

**I.   BACKGROUND**

This Motion stems from the events surrounding Plaintiffs' surrender of their liquor license and subsequent business closure. (Doc. 14.) Plaintiff June Durr owned a bar and restaurant, Loyalty Lounge, located in Scottsdale, Arizona. (Doc. 1 at 3.) Loyalty Lounge began operating in March 2021. (*Id.*) Plaintiff alleges that in May 2021 she was invited to a "meet and greet" with the Scottsdale Police Department ("SPD") members Detective Bailey and Officer Smith, but this meeting turned into an "impromptu liquor inspection." (*Id.* at 3.) Plaintiff alleges that Detective Bailey's inspection "led to the creation of an unbelievably false report." (*Id.* at 4.) Plaintiff also alleges that SPD wanted her to sign a blank inspection form and then "put no employee log, a false statement." (*Id.* at 4.)

Plaintiff alleges she sent Detective Bailey the employee log. She further alleges that this inspection was the beginning of SPD harassing black owned businesses. (*Id.* at 5.) The inspection report was sent to the Arizona State Department of Liquor Licenses and Control (the "Department") and included several liquor license violations, namely involvement of a hidden owner—Durr's son, a convicted felon—and issues with employee contact logs. (Doc. 2 at 3.) The Board issued Durr a warning. (Doc. 1 at 5.)

In addition to her allegations against Detective Bailey surrounding Loyalty's liquor license, Plaintiff also alleges that Officer Smith, as a zoning compliance officer for SPD, inspected Loyalty and found that it violated several zoning ordinances, one of which Plaintiff conceded to violating. (Doc.1 at 6 ¶¶ 30-32, 9 ¶ 43.) Plaintiff alleges that she was "forced to plead guilty" to this violation to save the business, and that the reporting of this violation was the result of SPD harassing her because she is a black business owner. (*Id.* at 9 ¶ 43; 14 ¶ 74.)

In June 2022, Durr and Loyalty Lounge entered into a consent decree finding that despite being required by law to derive at least forty percent of their revenue from food sales, only nine percent Loyalty Lounge's revenue was derived from food sales, with the remainder being from liquor. (Doc. 14-1 at 2.) In this decree, Plaintiff voluntarily surrendered Loyalty Lounge's liquor license. (*Id.* at 6.) Loyalty Lounge closed following surrender of its liquor license due to what Plaintiff alleges was "false reporting" by SPD. (*Id.* at 6.) In July 2022, Plaintiff submitted a public records request for departmental records "alleged to be the reason for the suspension and subsequent revocation of the license." (Doc 1 at 9 ¶ 47.) Plaintiff also claims that "emails and questions asked leading up to the failed audit raised red flags." (*Id.* at 10 ¶ 49.) She additionally alleges that she hired an expert who audited part time for liquor boards who "rechecked" the numbers and found that SPD's numbers were wrong, but that the Department "refused" to adjust their position. (*Id.*)

Plaintiff then brought six claims against the officers alleging three violations of 42 U.S.C. § 1983, gross negligence, interference with contract, and abuse of process. (Doc.

1.) In June 2023, Defendants filed an Answer to this Complaint (Doc. 7). Defendants now bring this Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure asking the Court to enter judgment in their favor based on the Complaint and Answer. (Doc. 14.) For the reasons explained below, the Court will grant Defendants' Motion.

## II.   LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court reviews Rule 12(c) motions under the same legal standard as Rule 12(b)(6). *Dworkin v. Hustler Mag., Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). "For purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Id.*

## III.   DISCUSSION

### A.  Consent Decrees

Defendants have attached two Consent Agreements from the Department to their response. (Doc.14-1; 14-2.) The first agreement includes a finding of fact that states a Department audit showed that the licensee, Loyalty Lounge, failed to derive at least forty percent of its gross revenue from food sales as required by statute. *See* Ariz. Rev. Stat. § 4-205.02(M). (Doc. 14-2 at 2.) The second agreement includes a finding of fact that June Durr's son, Javon Journe-Durr, held a managerial position at Loyalty Lounge, had control over its premises, and had access to and used its financial accounts to transact business yet Loyalty had not identified Javon as a manager or controlling person. (Doc. 14-1 at 8.) These findings of fact contradict factual allegations made in the Complaint. Defendants referred to these documents throughout their briefing and at oral argument asked the Court to consider these documents as they are public record and Plaintiff agreed

to be bound by the findings of fact in the agreement. Plaintiff asks the Court not to consider the documents because they were not attached to the Complaint. The Court agrees with Defendants and will use the consent decrees in its analysis. "On a Rule 12(c) motion, the court is not strictly limited to considering the face of the complaint." *Snoqualmie Indian Tribe v. City of Snoqualmie*, 186 F. Supp. 3d 1155, 1161–62 (W.D. Wash. 2016). The Court may consider documents not physically attached to the complaint where "their authenticity is not contested, and the complaint necessarily relies on them." *Id.* at 1162. The Court is only unable to take notice of facts that are subject to "reasonable" dispute. Fed. R. Evid. 201(b). Further, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to a motion for judgment on the pleadings." *Snoqualmie Indian Tribe*, 186 F. Supp. 3d at 1162 (cleaned up). Here, the consent decrees' authenticity is unquestioned, and the complaint does rely on the facts underlying them. Further, it is apparent that the decrees are pertinent to the Motion here. Accordingly, the Court will consider the consent decrees in its analysis.

### B. Counts I and II: Equal Protection Claims

Plaintiff brings two Federal Civil Rights Claims under 42 U.S.C. § 1983 against both Detective Bailey and Officer Smith. (Doc 1 at 14.) Plaintiff alleges that Officers Bailey and Smith violated her rights under the Fourteenth Amendment by discriminating against her because of her race (Count I) and her gender (Count II). (*Id.*) Because Officers Bailey and Smith were acting on behalf of SPD, the first step in the analysis asks whether they are entitled to a qualified immunity defense. *Wong v. United States*, 373 F.3d 952, 957 (9th Cir. 2004) ("[G]overnment officials are entitled to raise the qualified immunity defense immediately, on a motion to dismiss the complaint, to protect against the burdens of discovery and other pre-trial procedures."). For the reasons explained below, the Court finds these officers are entitled to qualified immunity. However, even if they were not entitled to qualified immunity, the Court also finds that Plaintiff insufficiently pleads discrimination, either for race or for gender. The Court will address these findings in turn.

#### a. Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In deciding if qualified immunity applies, the Court must determine: (1) whether the facts show the officer's conduct violated a constitutional right; and (2) whether that right was clearly established at the time of the violation. *Hopkins v. Bonvicino*, 573 F.3d 752, 762 (9th Cir. 2009). Although "'it is often beneficial' to perform the analysis in the sequence outlined above," *id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)), courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

Whether a right was clearly established must be determined "in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). "[T]he contours of the right must be sufficiently clear that at the time the allegedly unlawful act is [under]taken, a reasonable official would understand that what he is doing violates that right;" and "in the light of pre-existing law the unlawfulness must be apparent." *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994) (quotations omitted). "Therefore, regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not 'clearly established' or the officer could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). "Once the defense of qualified immunity is raised by the defendant, the Plaintiff bears the burden of showing that the rights allegedly violated were 'clearly established.'" *Maples v. Pinal County*, 453 F. Supp. 3d 1314, 1320 (D. Ariz. 2020) (quoting *LSO Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000)).

Plaintiff alleges that Detective Bailey and Officer Smith "knowingly violated the law by targeting Plaintiff Durr due to her race and/or gender" therefore qualified immunity is not appropriate. (Doc. 15 at 9.) Plaintiff also claims her complaint "alleges a series of

events that conclude Ms. Durr was targeted by Defendants." (*Id.*) Defendants allege that Plaintiff's complaint is conclusory, and that her "reference to vague and abstract constitutional rights is woefully inadequate and cannot overcome the individual Defendants' entitlement to qualified immunity." (Doc. 16 at 5.) The Court agrees that Plaintiff's complaint inadequately alleges that Defendants violated a clearly established right for qualified immunity purposes. *S.B. v. County of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017); *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015) (directing the Ninth Circuit to not define clearly established rights with a "high level of generality").

As to Detective Bailey, Plaintiff alleges that "he sent a false report to the State Liquor Department" and "unlawfully broke locks" and entered Loyalty Lounge looking to link Loyalty to the violence happening around the area. (Doc 1 at 4 ¶ 20; 7 ¶ 33.) First, Plaintiff offers no evidence supporting that Detective Bailey's report was false. Second, even if these allegations are taken as true, it is not clearly established that at the time the inspection was conducted and the report was sent that it was a constitutional violation to inspect an establishment for liquor violations and to send the results of that inspection to the Department. *Day v. Henry*, No. CV-21-01332-PHX-GMS, 2023 WL 5095071, at *6 (D. Ariz. Aug. 9, 2023) (noting that liquor licensees are subject to "on-site liquor inspections, investigation of complaints, covert underage buyer programs, audits and other financial inspections, and investigation of records to determine compliance with Arizona liquor laws"). Therefore, the Court finds that Plaintiff has failed to allege that Detective Bailey, either through his report or subsequent inspection, violated Plaintiff's clearly established rights, or that he acted unreasonably. Accordingly, the Court finds Detective Bailey is entitled to qualified immunity as applied to Counts I and II.

As to Officer Smith, Plaintiff appears to allege that by "demanding that [Loyalty's] fence be removed immediately" because it was a zoning violation and subsequently issuing citations and noncompliance notices to the landlord for said violation, he was harassing her due to her race and gender. (Doc. 1 at 6 ¶¶ 30–33.) Despite this, Plaintiff conceded that

she installed the fence, and appears to recognize she knew it was not allowed by the zoning ordinance. (*Id.* at ¶¶ 29–31.) Plaintiff is unable to show that this conduct violated any clearly established right, as Officer Smith was specifically authorized to enforce zoning violations. *See* Scottsdale Zoning Ordinance § 1.201 (the "Zoning Administrator shall enforce this Zoning Ordinance."); Scottsdale Zoning Ordinance § 1.1401 ("Any person, firm, corporation, partnership, or association, whether as principal, owner, agent, tenant, or otherwise, who violates, disobeys, omits, or refuses to comply with, or who resists the enforcement of any of the provisions of this Zoning Ordinance is subject to a civil sanction (by issuance of a civil citation or a long form complaint) or administrative remedy, including an administrative consent order."); *see also Henry v. City of Somerton*, CV-18-03058-PHX-DJH, 2021 WL 2514686, at *7 (D. Ariz. June 17, 2021) (finding that a reasonable code enforcement officer would not have considered issuing code citations to plaintiff to have violated plaintiff's "constitutional rights" against discrimination based on religion). Similarly, a reasonable officer in Officer Smith's shoes likely would not have presumed that carrying out his job as a zoning enforcement officer in issuing zoning violation citations was violating any of Plaintiff's clearly established rights. Plaintiff appears to allege that these citations were issued because of her gender and/or race, however she also concedes that Loyalty Lounge was in violation of the zoning code. Therefore, Plaintiff has failed to allege that Officer Smith, at the time of the citation, violated one of her clearly established rights, or further that he acted unreasonably. Accordingly, the Court finds Officer Smith is entitled to qualified immunity as to Counts I and II.

### b.  Equal Protection

Even if Detective Bailey and Officer Smith were not entitled to qualified immunity, Plaintiff has not established an equal protection claim. Under § 1983, "[e]very person who, under color of [law] . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws, shall be liable to the party injured." 42 U.S.C. § 1983. To

establish a § 1983 equal protection violation, a plaintiff "must show that the defendants, acting under color of state law, discriminated against [him] as [a] member[ ] of an identifiable class and that the discrimination was intentional." *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003) (internal citations omitted). To find a defendant acted with intent to discriminate, a plaintiff must show that defendant "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979). In addition to showing that a state actor discriminated against them because of their status as a protected class —here race and gender —a plaintiff must show that they were treated differently than similarly situated actors. *See Lam v. City and County of San Francisco*, 868 F. Supp. 2d 928, 951 (N.D. Cal. 2012), *aff'd*, 565 Fed. App'x. 641 (9th Cir. 2014) (unpublished).

Defendants argue that as applied here, Plaintiff has failed to allege either intent to discriminate *or* that she was treated differently than other similarly situated actors—specifically bar or restaurant owners in the Scottsdale community. (Doc. 15 at 11.) The Court generally agrees. The closest Plaintiff's complaint gets to *specifically* alleging intent is when discussing zoning citation hearing. (Doc 1 at 8 ¶ 42.) Plaintiff alleges that Defendants constructed "intentional delays" in the hearing process. (*Id.*) However, Plaintiff does allege that "Defendants were targeting Loyalty's and did so because Plaintiff Durr is a Black female and police did not want her son around, who is also Black." (*Id.* at 11 ¶ 56.) Reading this statement in the light most favorable to Plaintiff, the Court could consider this an allegation of intent for equal protection claim reasons. Even so, given that Plaintiff entered into a consent decree accepting liquor violations, and conceded zoning violations in her complaint, it would be hard to find, even at this stage in the litigation, that Defendants acted with an intent other than enforcing the liquor regulations and the Scottsdale Zoning Ordinances. Further, even if the Court found that Plaintiff adequately alleged intent, she fails to allege that she was treated differently from other restaurant or bar owners in the area. The closest she gets to this allegation is by conclusory alleging that

Detective Bailey's original inspection "was the start" of "harassing and disparate treatment from other businesses." (Doc. 1 at 4.) She does not point to any facts expounding on how other businesses were treated to support this conclusion. Therefore, the Court finds Plaintiff fails to allege equal protection. Accordingly, Count I and II fail.

### C. Count III: *Monell* Claim

In Count III Plaintiffs allege that the City of Scottsdale (the "City") has violated their constitutional rights under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Specifically, Plaintiffs allege that the City "either failed to property hire, supervise, discipline, monitor, terminate and/or train its employees and/or failed to establish policies and procedures" to prevent unqualified officers to be retained by SPD. (Doc. 1 at 16 ¶ 82.) Plaintiffs further allege that these failures led to their injuries, and proximately caused the violation of their constitutional rights. (*Id.* at ¶ 85.) Defendants argue that Plaintiffs' Complaint has failed to establish any of the necessary *Monell* elements to sustain a claim. (Doc. 15 at 12.) The Court agrees.

"[T]o be liable under *Monell*, Plaintiffs must show: (1) that Plaintiffs were deprived of a constitutional right; (2) that the City had a policy; (3) that the policy is deliberately indifferent to the Plaintiffs' constitutional right; and (4) that the policy was the moving force behind the constitutional violation." *Snyder v. City & County of San Francisco*, 288 Fed. Appx. 346, 348 (9th Cir. 2008) (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)).

As to the first element, the Court already found that Detective Bailey and Officer Smith did not violate Plaintiffs' equal protection rights under the Fourteenth Amendment. However even if Plaintiffs had met this element, as Defendants note, Plaintiffs have failed to meet the second. Plaintiffs have failed to identify any specific "policy" implemented by the City that gives rise to this claim. The closest Plaintiffs come to making this allegation is a generic reference to unknown hiring and training policies. (Doc. 1 at 15 ¶ 84.) This is not enough to sustain a *Monell* claim. *See Jensen v. City of Garden Grove*, 2021 WL 3579415, at *3 (C.D. Cal. Apr. 22, 2021) (finding that *Monell* claims must allege "specific

policies, practices, or customs contributed to the alleged constitutional violations and what specific constitutional violations occurred").

Plaintiffs have failed to identify a policy, let alone a policy with a causal link to any of their alleged harms. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146 (9th Cir. 2012) ("Under *Monell*, a plaintiff must also show that *the policy* at issue was the "actionable cause" of the constitutional violation, which requires showing both but for and proximate causation.") (emphasis added). Further, Plaintiffs appear to allege the harm caused by the City's policies is the loss of Loyalty's liquor license. However, per the consent decree this is not the case. From the facts here, Loyalty lost its liquor license because of admitted liquor law violations.

Because Plaintiffs have failed to allege the deprivation of a constitutional right, a City policy violating a constitutional right, or a link between a policy and the alleged harm, the Court finds Plaintiffs' *Monell* claim, Count III, fails.

**D. Count IV: Gross Negligence Claim**

In Count IV Plaintiffs allege that all Defendants reported "false" information to the Department, and that Detective Bailey and Officer Smith gave false testimony, and therefore Defendants engaged in gross negligence against Plaintiff. (Doc. 1 at 16 ¶ 89.) Defendants argue that Plaintiff's claim fails because Defendants owed Plaintiff no duty. (Doc. 15 at 13.)

Public employees may be subject to tort liability for their negligence. *Greenwood v. State*, 175 P.3d 687, 691 (Ariz. Ct. App. 2008.). However, to have a gross negligence claim against an officer under Arizona law, a plaintiff must allege that "that the conduct of the police was outside the duty and standard of care required of them." *Cullison v. City of Peoria*, 584 P.2d 1156, 1158 (Ariz. 1978). Accordingly, the first step under this framework is to determine whether the official owed a duty of care to plaintiff. "Arizona courts have found that police conduct has created a special relationship giving rise to a duty only in specific circumstances." *Hogue v. City of Phoenix*, 378 P.3d 720, 724 (Ariz. Ct. App. 2016). For there to be a duty owed, there must be some kind of special relationship based

on "contract, family relations, or conduct undertaken by the defendant." *Gipson v. Casey*, 150 P.3d 228, 232 (Ariz. 2007).

Here, Plaintiffs do not point to a special relationship, by conduct or otherwise, that gives rise to a duty of care. As Defendants note, Detective Bailey and Officer Smith did not have a relationship of care with Plaintiffs but were instead investigating. Instead of contending that a special relationship was present, Plaintiffs argue that knowingly giving false testimony can amount to gross negligence regardless of duty. In making this argument, Plaintiffs filed supplemental authority with the Court. (Doc. 19.) The Court finds these cases unpersuasive. First, Plaintiff cites *Spooner v. City of Phoenix*, 435 P.3d 462 (Ariz. Ct. App. 2018). In *Spooner*, a plaintiff brought negligence claims against a city and an officer for claims arising out of the officer's testimony before a grand jury. *Id.* at 464–65. The Court did not walk through a negligence analysis, but rather found the officer was entitled to qualified immunity. *Id.* at 467–68. Plaintiffs' supplemental notice merely cites cherry-picked dicta, which this Court will not use as part of its holding. Next, Plaintiff cites to *Miranda v. City of Casa Grande*, No. 2 CA-CV 2022-0030, 2022 WL 17970593 (Ariz. Ct. App. June 2, 2023) (mem.) for the proposition that "[k]nowing disregard of a suspect's consent or knowingly giving false testimony can, in some cases, amount to a police officer's conscious disregard of the law or the rights of others sufficient to support a claim of gross negligence." *Id.* at *4 (cleaned up). The Court is not moved by Plaintiffs' cherry-picked quotation because *directly* after this quote the court states "[b]ut the claimant must show wanton misconduct that is flagrant and evinces a lawless and destructive spirit." *Id.* As explained throughout this Order, there is nothing in Plaintiffs' complaint that evidences Detective Bailey acting with wanton misconduct or a destructive spirit.

Accordingly, the Court finds Plaintiffs' claim for gross negligence fails on the pleadings.

**E.  Count V: Interference with Contract Claim**

In Count VI Plaintiffs appear to allege that Defendants interfered with Plaintiffs' lease with their landlord and sale of the business. (Doc. 1 at 16 ¶ 92.) This appears to be

a claim for tortious interference with business expectancy and a claim that Defendants interfered with Plaintiffs' lease. To have a claim for tortious interference under Arizona law a plaintiff must show be able to "identify the specific relationship with which the defendant interfered." *Dube v. Likins*, 167 P.3d 93, 101 (Ariz. Ct. App. 2007). The claim must further allege "a colorable economic relationship between the plaintiff and a third party with the potential to develop into a full contractual relationship." *Id.* (internal citations omitted). "[T]o prevail on a claim of tortious interference with a business relationship, when the relationship is prospective, there must be a reasonable assurance that the contract or relationship would have been entered into but for the interference." *S. Union Co. v. Sw. Gas Corp.*, 180 F. Supp. 2d 1021, 1048 (D. Ariz. 2002) (cleaned up).

Here, Plaintiffs allege without supporting facts that they were in the process of selling Loyalty, and that they had an existing relationship with their landlord that Defendants, through their actions reporting zoning and liquor violations, interfered with. (Doc. 16 at 14.) That said, Plaintiffs have not pointed to any contract either with the landlord or with these unidentified potential buyers. As to the lease with the landlord, outside of the Scottsdale Zoning Board notifying the landlord of noncompliance with zoning regulations, Plaintiff has not identified any actions whereby Defendants "interfered" with their lease. (Doc. 1 at 7 ¶ 36.) Plaintiffs also do not offer any facts supporting how these reports fall outside the scope of their lease agreement. As to the purported agreement to sell Loyalty, all Plaintiffs allege is that Plaintiff Durr "attempted to sell the business and the landlord continued to block the sale so that it could get a new tenant." (*Id.* at 13 ¶ 70.) Plaintiffs further allege that the landlord was working in conjunction with Defendants. (*Id.* ¶ 71.) Plaintiff offers no allegations of specific actions by either the landlord or Defendants that support these conclusory statements. Additionally, Plaintiffs' complaint illuminates that she only tried to sell Loyalty Lounge *after* Plaintiff Durr surrendered her liquor license, making the allegation that police interfered with an ongoing sale factually impossible. (Doc. 1 at 13 ¶¶ 69–71.) Accordingly, Plaintiff has failed to plead a colorable claim for interference with contract.

### F. Count VI: Abuse of Process Claim

In Count VI Plaintiffs bring abuse of process claims against all Defendants, except Officer Smith. (Doc. 1 at 17.) To have an abuse of process claim a plaintiff must allege both that there was (1) a willful act in the use of judicial process (2) and that it was used for an ulterior purpose that is not proper in the regular conduct of the proceedings. *Crackel v. Allstate Ins. Co.*, 92 P.3d 882, 887 (Ariz. Ct. App. 2004). A party can demonstrate an ulterior motive by "showing that the process has been used primarily to accomplish a purpose for which the process was not designed." *Id.* (cleaned up). "[A] plaintiff must show that the defendant's improper purpose was the primary motivation for its actions, not merely an incidental motivation." *Id.* at 889 (citing *Nienstedt v. Wetzel*, 651 P.2d 876, 882 (Ariz. Ct. App. 1982)). Further, "Arizona interprets 'process' as encompassing "the entire range of procedures incident to the litigation process." *Id.* at 887 (internal citations omitted).

Plaintiffs allege that Defendant Bailey "committed a willful act when he presented fabricated records to the Arizona Department of Liquor" and "Officer Smith committed a willful act when he presented false information related to the City of Scottsdale proceedings" and that both of these acts were done for the ulterior purpose of "not want[ing] a Black female run business in the area." (Doc. 1 at 17 ¶¶ 98–99.) Plaintiffs allege that this gives rise to a claim for abuse of process under Arizona law. (*Id.* ¶ 97.) Defendants argue that Plaintiffs do not present a colorable claim for abuse of process because (1) providing information to another body is not "process" under Arizona law and (2) even if it were, Detective Bailey is entitled to testimonial immunity in providing information to the Department. (Doc. 14 at 16.) The Court agrees with Defendants.

First, Detective Bailey providing information to the Department is likely not considered "process" under Arizona law. In *Goldman v. Sahl*, 462 P.3d 1017 (Ariz. Ct. App. 2020), the court considered whether defendant's filing of a claim with the Arizona Bar constituted "process" under Arizona law. The court found that this was not considered process because "the mere filing of a bar charge is not 'use' of a judicial process." *Id.* at

1035. Defendants argue that like in *Goldman*, where the mere filing with an administrative-like body did not constitute "process," Detective Bailey's filing of a report with an administrative agency also cannot be found to be process to sustain an abuse of process claim. The Court generally agrees with this analysis, however, it is not dispositive. Even if Detective Bailey's relaying of information to the Department constitutes as "judicial process," Plaintiffs' claim fails because Officer Bailey is entitled to immunity from civil liability for this "testimony." *See Drummond v. Stahl*, 618 P.2d 616, 619 (Ariz. Ct. App. 1980) ("A statement made in the course of a judicial hearing is absolutely privileged as long as it bears some relation to the subject judicial proceeding.")

Additionally, Plaintiffs' statements about the motivation of Defendants Bailey and Smith is entirely conclusory and speculative, which is insufficient to state a claim for abuse of process. *See Crackel*, 92 P.3d at 889 ("[A] claimant must present more than mere speculation to support the assertion that the defendant has used court processes with an improper intent."). Plaintiff fails to show that animus toward her was Defendants' purpose, let alone *primary* purpose as required for an abuse of process claim. *See id.* ("The significance of th[e] word ["primarily"] is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant.") (quoting Restatement (Second) of Torts § 682 cmt. b (1977)).

Accordingly, because reporting information cannot be said to be engaging in the judicial process, or alternatively because Detective Bailey has testimonial immunity and Plaintiff has failed to show a malicious primary intent in his reporting, the Court finds that Plaintiffs' abuse of process claim fails.

### IV. LEAVE TO AMEND

"Leave to amend need not be given if a complaint, as amended, is subject to dismissal." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). The Court's discretion to deny leave to amend is particularly broad where Plaintiff has previously been permitted to amend his complaint. *Sisseton-Wahpeton Sioux Tribe v.*

*United States*, 90 F.3d 351, 355 (9th Cir. 1996).  The Court finds that further attempts to amend Plaintiffs' equal protection and *Monell* claims (Counts I, II, and III) would be futile. However, the Court will grant leave to amend as to Plaintiffs' state law claims (Counts IV, V and VI).

## V. CONCLUSION

For the reasons discussed above,

**IT IS HEREBY ORDERED granting** Defendants' Motion for Judgment on the Pleadings (Doc. 14).

**IT IS FURTHER ORDERED dismissing** claims I, II and III **with prejudice.**

**IT IS FURTHER ORDERED granting** Plaintiff leave to amend claims IV, V and VI Plaintiff must file her First Amended Complaint no later than ten (10) days after the date of this ruling.

Dated this 27th day of March, 2024.

Honorable Susan M. Brnovich
United States District Judge