1   Scot L. Claus (#014999)
Vail C. Cloar (#032011)
2   Holly M. Zoe (#033333)
DICKINSON WRIGHT PLLC
3   1850 N. Central Ave., Suite 1400
Phoenix, Arizona 85004-4568
4   Telephone: (602) 285-5000
Facsimile: (844) 670-6009
5   [Firm Email:  courtdocs@dickinsonwright.com]
*Attorneys for Defendants*
6

7             **IN THE UNITED STATES DISTRICT COURT**

8              **FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| 9    June Durr, an individual and Loyalty Restaurant & Lounge LLC dba Loyalty Lounge, an Arizona Limited Liability Company, | Case No.: 2:23-cv-00752-SMB |
| 10 | |
| 11 | **MOTION TO DISMISS AMENDED COMPLAINT** |
|          Plaintiffs, | |
| 12 | **(Oral Argument Requested)** |
| 13    v. | |
| 14    City of Scottsdale, a municipal entity; Christian Bailey, an individual acting under the color of law; Stephen Smith, an individual and John and/or Jane Doe I-X, individual(s) acting under the color or law, | |
| 15 | |
| 16 | |
| 17          Defendants. | |

18        Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants request

19 the Court dismiss Plaintiffs' First Amended Complaint (Doc. 21). The Court previously found

20 that Plaintiffs failed to allege a duty to support their negligence claim. (Doc. 20 at 11.) The

21 Court also found that Plaintiffs' allegations of an attempted sale, unadorned with factual

22 allegations, were insufficient to state a claim for tortious interference with contract. (*Id.* at 12.)

23 And the Court found that reporting to an administrative agency cannot support a claim for

24 abuse of process under Arizona law. (*Id.* at 14.) Although the Court could have unquestionably

25 ended Plaintiffs' farfetched litigation at that point, it graciously gave Plaintiffs the opportunity

26 to amend their Complaint to successfully plead a state-law claim. Plaintiffs failed to do so.

- 1 -

1      Rather than file an amended pleading that cures the deficiencies specifically identified

2  by the Court, Plaintiffs' Amended Complaint borders on unintelligibility. It seems as though

3  Plaintiffs' claims arise out of some false reporting or testimony made somewhere to someone;

4  but it is entirely unclear what false statements were purportedly made, to whom, when, or how

5  Plaintiffs were damaged by them when they *voluntarily* accepted responsibility for their

6  violations of state and local law. Plaintiffs have done absolutely nothing to address the Court's

7  confusion regarding precisely what false statements underlie their claims.

8      To the extent that one can understand the Amended Complaint, it suffers from the same

9  defects as the Court identified in the original Complaint. Plaintiffs have still failed to heed the

10  requirements of pleading in federal court. For example, it is entirely unclear what Officer

11  Smith is alleged to have done, because he barely appears in the amended pleading, and

12  Plaintiffs acknowledge they have not complied with the notice of claim statute with respect to

13  him. Just as before, Plaintiffs cannot demonstrate the existence of a duty owed to them by

14  either the City of Scottsdale or the individual Defendants as a matter of law, thus vitiating their

15  claim for "gross negligence." Plaintiffs persist in asserting a claim for "tortious interference"

16  with contract, but still have not identified a specific contract, claimed any termination of any

17  contractual relationship, plausibly alleged that the Defendants were aware of any contract, or

18  alleged that Defendants acted intentionally interfered with such a contract. And Plaintiffs still

19  have not alleged—nor can they allege—facts demonstrating the Defendants' initiation of any

20  "process" as that term is defined by Arizona law. Plaintiffs cannot overcome the various

21  immunities that bar liability for providing information to a government agency. And finally,

22  perhaps most emblematic of their ignorance of Arizona law, Plaintiffs still seek an award of

23  punitive damages, completely ignoring that the Arizona legislature has prohibited the award of

24  punitive damages against any of the Defendants pursuant to A.R.S. § 12-820.04.

25      The Court gave Plaintiffs another chance to allege a cognizable claim. Plaintiffs failed

26  for one simple reason: there is no set of facts under which Defendants could be liable for

1    reporting Plaintiffs' legal violations and enforcing the City's ordinances. The Court should

2    bring this case to an end. This motion is supported by the following Memorandum of Points

3    and Authorities and Certificate of Counsel, both of which are incorporated by this reference.

4                    **MEMORANDUM OF POINTS AND AUTHORITIES**

5    **I.        PROCEDURAL AND FACTUAL BACKGROUND**

6             The Amended Complaint is virtually indecipherable with respect to who is being sued,

7    for what alleged conduct, and when that conduct occurred.[1] In an effort to aid the Court,

8    Defendants provide the following synopsis, but admit to being truly puzzled by the Amended

9    Complaint's internal inconsistencies, lack of narrative, and non sequitur allegations.

10            Plaintiff Loyalty Lounge is an establishment that served alcohol and food in Scottsdale

11   and was apparently named "restaurant of the year" by an unidentified "local media outlet."

12   (Doc. 21 at ¶¶ 2, 15–16.) Plaintiffs appear to allege three salient events: (1) a "meet and greet"

13   which Plaintiffs claim "turned into" an impromptu liquor inspection in May 2021 (*id.* ¶¶ 59,

14   62–63); (2) a food and beverage audit (not alleged to have been conducted by any Defendant)

15   in March 2022 reflecting that Loyalty Lounge derived only 9.09% of its income from food

16   sales, culminating in Plaintiffs voluntarily surrendering Loyalty Lounge's liquor license (*id.*

17   ¶¶ 26, 38, 48–49); and (3) undated (and admitted) zoning violations that were allegedly

18   reported to Plaintiffs' landlord by an unidentified person (*id.* ¶¶ 21, 69, 86). Plaintiffs allege

19   that something, perhaps multiple things, were falsely reported in connection with those events.

20   (*Id.* ¶¶ 17–18, 27, 31, 36.) What those false statements are, and who made them, however,

21   remains a mystery.

22   _____

23   [1] There is a real question as to whether the Amended Complaint complies with Rule 8 of the
     Federal Rules of Civil Procedure. The Amended Complaint alleges, for instance, "there were

24   also public roads" (Doc. 21 ¶ 33), that Jeff Walther was the Police Chief (*id.* at ¶ 13), that
     Loyalty Lounge was once pictured in a news article about a nearby shooting (*id.* at ¶ 72), and

25   that Javon Durr was "falsely" arrested "with [e]xcessive and unreasonable force" (*Id.* ¶ 63).
     Those allegations have no apparent relevance to any of the extant claims in the Amended

26   Complaint. Conversely, there is virtually no attempt to identify any particular false statements
     that seem to form the basis for those claims, much less how Plaintiffs were harmed by them.

1    Despite those mysterious false statements, Plaintiffs have admitted their failure to

2    comply with state and local laws with respect to the sale of liquor (*See* Consent Agreement and

3    Order 000259-22, attached hereto as Exhibit A at 1, 4), as well as their violation of the City's

4    Zoning Ordinance, (Doc. 21 ¶¶ 18, 20–21). With respect to Officer Smith, the Amended

5    Complaint says virtually nothing, much less alleges anything sufficient to state a cause of

6    action. It does allege his existence in the universe and further alleges that he worked as a

7    zoning compliance officer for the City of Scottsdale. (Doc. 21 ¶ 6.)

8    Because of its struggles to comply with state and local laws, Loyalty Lounge

9    voluntarily "surrendered" its liquor license, purportedly on June 6, 2022. (*Id*. ¶ 48.) That

10   surrender was based on Plaintiffs' admission that it had engaged in conduct which constituted

11   "violations of A.R.S. § 4-205.02(M) and 4-213(C)(1)." (*See* Ex. A at 1.) Under those statutes,

12   a restaurant liquor licensee must "derive[] at least forty percent of . . . gross revenue from the

13   sale of food," or else face revocation or suspension of that license. A.R.S. §§ 4-205.02(M), 4-

14   213(C)(1). Stated simply, Plaintiffs gave up their liquor license because they *admittedly* did

15   not comply with the statutory requirements for the type of license they held.

16   **II.     ARGUMENT**

17   As noted above, the Amended Complaint is, in many ways, less cogent than the original

18   Complaint. It is certainly less effective at setting forth valid claims, and dismissal is the only

19   proper remedy.[2] As Plaintiffs should by now recognize, they cannot rely upon "threadbare

20   allegations" that merely set forth a formulaic recitation of conclusory allegations to withstand

21   dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*,

22   550 U.S. 544, 555 (2007)). Rather, "to survive a motion to dismiss, a complaint must contain

23   sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

24   face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Although the Court must accept well-pled facts

25   

26   [2] Although only state law claims remain, this Court has often noted that dismissal of those
     claims, rather than remand, is preferable when remand would be futile. *See, e.g.*, *Advocates for
     Individuals with Disabilities LLC v. MidFirst Bank*, 279 F. Supp. 3d 891, 895 (D. Ariz. 2017).

1  in the Amended Complaint as true, "conclusory allegations of law and unwarranted inferences

2  are insufficient to avoid a Rule 12(b)(6) dismissal." *Turner v. City & Cnty. of San Francisco*,

3  788 F.3d 1206, 1210 (9th Cir. 2015) (quoting *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th

4  Cir. 2009)).

5       A Plaintiff's "factual allegations . . . must [also] plausibly suggest an entitlement to

6  relief such that it is not unfair to require the opposing party to be subjected to the expense of

7  discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Here,

8  as demonstrated further below, Plaintiffs' remaining claims do not come close to satisfying the

9  foregoing pleading standards; and it would be manifestly "unfair to require" the Defendants

10  "to be subjected to the expense of discovery and continued litigation" of Plaintiffs' specious

11  claims. *Id*.

12       Based on these axiomatic principles, the Amended Complaint should be dismissed in its

13  entirety for several reasons. First, the claims against Officer Smith are virtually non-existent,

14  and Plaintiffs admit they have failed to personally serve a notice of claim upon him. Second,

15  the tort claims as pleaded are substantively deficient in virtually every aspect. Third, any

16  claims predicated upon presentation of testimony or evidence to the Department of Liquor are

17  barred by both *Noerr-Pennington* and the absolute testimonial privilege. Fourth, the City is

18  absolutely immune from suit under A.R.S. § 12-820.01 for the licensing and regulation of

19  restaurants holding liquor licenses. Finally, in no event can Defendants state a claim for

20  punitive damages as a matter of Arizona law.

21       **A.    The claims against Officer Smith should be dismissed.**

22       The claims against Officer Smith should be dismissed for two independent reasons.

23  First, as a procedural matter, Plaintiffs failed to personally serve a notice of claim on Officer

24  Smith as required by Arizona law. It is well settled that A.R.S. § 12-821.01 requires a person

25  with claim against a public official and governmental body to serve a notice of claim on *both*

26  the officer and the governmental entity. A.R.S. § 12-821.01(A); *Crum v. Superior Court*, 186

Ariz. 351, 352 (1996); *Dominguez v. City of Scottsdale*, 587 F. Supp. 3d 914, 937 (D. Ariz. 2022) ("Koller and McElley are public employees who should have been served with a notice of claim pursuant to § 12-821.01."); *Crick v. City of Globe*, 606 F. Supp. 3d 912, 918 (D. Ariz. 2022). Failure to comply with the notice-of-claim requirement within 180 days of claim accrual bars any action against the public official or entity arising under state law. A.R.S. § 12-821.01(A); *Crick*, 606 F. Supp. 3d at 318. Here, Plaintiffs allege that they have complied with the notice of claim statute—but *only* with respect to the City and Officer Bailey. (Doc. 21 ¶ 14.) Plaintiffs' failure to comply with the notice of claim statute is fatal to their claims against Officer Smith. *Id*.

Second, Plaintiffs have barely pled any allegations against Officer Smith, must less established any cause of action. There are virtually no allegations against Officer Smith beyond his existence within Maricopa County and employment (Doc 21 ¶ 6) and that he allegedly wrote "false reports." (*Id.* ¶ 27.) But a mere allegation of "false reports" is a paradigm of "an unadorned, the-defendant-unlawfully-harmed-me accusation" that fails to state a claim. *Iqbal*, 556 U.S. at 678. It is not enough to allege conclusions and labels of illegal action and motivation, a plaintiff must allege *facts*. *Id.* (rejecting allegations that defendant was "principal architect" of invidious race discrimination policy as mere conclusions insufficient to state a claim). Plaintiffs have failed to state any plausible claim against Officer Smith, and the claims against him should be dismissed with prejudice.

      **B.**   **Plaintiffs have come nowhere close to alleging a cognizable tort as to any Defendants.**

Plaintiffs have three remaining claims in this case: a gross negligence claim (Count One); a tortious interference with contract claim (Count Two); and an abuse of process claim (Count Three). Not only have Plaintiffs failed to cure the deficiencies the Court specifically identified as existing, but they have failed to meet even the most basic elements of the torts.

1  **1. Plaintiffs' gross negligence claim fails.**

2  In addition to all of the other elements necessary to state a claim for negligence, "[a]

3  gross-negligence claim additionally requires a showing of [g]ross, willful, or wanton conduct."

4  *Noriega v. Town of Miami*, 243 Ariz. 320, 326 ¶ 23 (App. 2017) (internal quotation marks

5  omitted); *Armenta v. City of Casa Grande*, 205 Ariz. 367 ¶ 20 (App. 2003). Plaintiffs were

6  required to allege plausible *facts* demonstrating that a defendant engaged in conduct that was

7  "flagrant and evinces a lawless and destructive spirit." *Landeros v. City of Tucson*, 171 Ariz.

8  474, 475 (App. 1992). Merely parroting those words is insufficient.

9  Here, the Amended Complaint alleges no plausible facts demonstrating such conduct

10  on the part of any Defendant, just the conclusory label of "false." Not only is that insufficient,

11  it is strikingly implausible. Indeed, Plaintiffs have *admitted* to violating state law and

12  Scottsdale's Zoning Code. It belies reason to suggest that Defendants engaged in "wanton"

13  conduct by reporting Plaintiffs' admitted violations. It is similarly impossible to imbue any of

14  the conduct in which Defendants are actually alleged to have engaged with the character of a

15  "lawless and destructive spirit." *Landeros*, 171 Ariz. at 475. Instead, at worst, Defendants were

16  reporting *Plaintiffs'* "lawless[ness]."

17  In any event, another essential element of a gross negligence claim under Arizona law

18  is the existence of a duty, *i.e.*, "an 'obligation, recognized by law, which requires the defendant

19  to conform to a particular standard of conduct in order to protect others against unreasonable

20  risks of harm." *Gipson v. Casey*, 214 Ariz. 141, 143 ¶ 10 (2007) (quoting *Markowitz v. Ariz.*

21  *Parks Bd.*, 146 Ariz. 352, 354 (1985)). The question of duty is always a "threshold issue" and

22  a question of law for the Court. *Id.* at 143 ¶¶ 9, 11. Whether a duty exists is to be determined

23  prior to any case-specific facts are considered and only "arise from special relationships based

24  on contract, family relations, or conduct undertaken by the defendant" or "public policy

25  considerations." *Id.* ¶¶ 18, 23.

26

1    Here, Plaintiffs point to absolutely no "special relationship" that would support the

2    imposition of a duty as a matter of law. And it would be anathema to "public policy

3    considerations" to suggest that Officer Smith or Detective Bailey should have *ignored*

4    Plaintiffs' serial, flagrant, and admitted violations of state and local law. *Id*. It is well settled

5    that, absent some promise to take action, government officials owe no general duty to the

6    public writ large. *See, e.g.*, *Hogue v. City of Phoenix*, 240 Ariz. 277, 281 ¶ 12 (App. 2016)

7    ("Arizona courts have found that police conduct has created a special relationship giving rise

8    to a duty only in specific circumstances, for example when police take a 911 call about a

9    potential threat and tell the caller that they will take action on that information.").

10    There is no case supporting the curious construct that an officer or government agent

11    investigating and reporting on the (admittedly) illegal activities of persons and establishments

12    owe a duty to those suspects. Those courts that have considered such a bizarre construct have

13    reached the opposite conclusion. *See, e.g.*, *Otero v. Warnick*, 614 N.W.2d 177, 182 (Mich.

14    App. 2000) (explaining that investigating witness owed no duty to suspect because their

15    interests were unquestionably adverse); *Lahm v. Farrington*, 90 A.3d 620, 623 (N.H. 2014)

16    (holding that police officer owes no duty of investigation to suspect).

17    Plaintiffs cannot establish any of the elements necessary to support their gross

18    negligence claim. Therefore, Count One should be dismissed.[3]

19

20

21

---

[3] The only plausible basis for urging the state law torts against the City appears to be based on a theory of vicarious liability. But under Arizona law, when the acts of a municipality are "done in the exercise of a corporate franchise conferred upon the [municipal] corporation for the public good, and not for private corporate advantage, the corporation is not liable for the consequences of such acts on the part of its officers and servants." *Smyser v. City of Peoria*, 215 Ariz. 428, 435 ¶ 20 (App. 2007) (quoting Eugene McQuillin, *The Law of Municipal Corporations* § 53.23 at 384–85 (3d ed. 2002)). Here, the Complaint expressly alleges that Defendants Bailey and Smith were "at all times . . . [acting] within the scope of [their] employment." (Doc. 21 at ¶ 7). Accordingly, as a matter of law, the City ***cannot be*** vicariously liable for the conduct of Defendants Bailey and Smith. *Id*.

1       **2. Plaintiffs have not stated a tortious interference claim.**

2           While the Amended Complaint asserts that Defendants have "tortiously interfered" with

3   Plaintiff's "contracts," the Amended Complaint fails to adequately allege the necessary facts to

4   support its claim and Count Two should be dismissed. A claim for tortious interference with

5   contract requires the existence of an *actual contract* with which defendants *actually interfered*.

6   *Snow v. W. Sav. & Loan Ass'n,* 152 Ariz. 27, 33 (1986). "To plead a prima facie case of

7   intentional interference with contract, the Plaintiff must allege: (1) the existence of a valid

8   contractual relationship; (2) knowledge of the relationship on the part of the interferor; (3)

9   intentional interference inducing or causing a breach; (4) resultant damage to the party whose

10  relationship has been disrupted; and (5) that the defendant acted improperly." *Id.*

11          Plaintiffs' conclusory allegations fail to adequately plead these elements, much less

12  plead them with the required degree of plausibility or specificity. *Iqbal*, 556 U.S. at 678. The

13  Amended Complaint makes much of Plaintiffs' contractual relationship with a landlord (*e.g.*,

14  Doc. 21 ¶¶ 66, 69), but it does not allege the lease was ever breached or terminated, much less

15  as the result of Defendants' intentional and improper conduct (as opposed to Defendants'

16  failure to comply with their obligations under the lease). There can be no cause of action

17  without a breach, and some intentional and wrongful act by Defendants causing that breach.

18  *Snow*, 152 Ariz. at 33.  Plaintiffs also allege that "[t]he actions of the Defendants caused

19  buyers to reevaluate the case and caused the sales to not go through." (Doc. 21 ¶ 67.) To the

20  extent that allegation is intended to support a tortious interference with *contract* claim,

21  however, it is clearly insufficient because a hoped-for sale does not constitute a contract. *Id.* at

22  33.

23          Charitably, assuming Plaintiffs are urging some type of claim for tortious interference

24  with prospective economic advantage based on their being "in the process of selling" the

25  business and that buyers were caused to "reevaluate the case" (Doc. 21 at ¶¶ 66–67), it still

26  fails. To state a claim for that tort under Arizona law, Plaintiffs were required to allege the

existence of a "*specific relationship* with which the defendant interfered." *Dube v. Likins*, 216 Ariz. 406, 414 ¶ 19 (App. 2007) (emphasis added). Moreover, "[t]o state a claim," Plaintiffs were required to plead a "colorable economic relationship between the Plaintiff and a third party with the potential to develop into a full contractual relationship." *Id*. (quoting *Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n*, 148 P.3d 1179, 1217–18 (Haw. 2006)). Plaintiffs were further required to plead actual facts demonstrating "a reasonable assurance that the contract or relationship would have been entered into but for the interference." *S. Union Co. v. Sw. Gas Corp.*, 180 F. Supp. 2d 1021, 1048 (D. Ariz. 2002) (cleaned up). Finally, Plaintiffs had to allege facts demonstrating that the Defendants **knew** of the existence of valid business expectancies and that they "intentionally induced or cause termination of the business expectancy." *Antwerp Diamond Exch. of Am., Inc. v. Better Business Bureau of Maricopa Cnty., Inc.*, 130 Ariz. 523, 530–31 (1981).

Plaintiffs' Amended Complaint alleges none of the necessary elements. Plaintiffs' Amended Complaint does not allege the existence of any "specific relationship" constituting a valid business expectancy. *Dube*, 216 Ariz. at 414. Plaintiffs allege no facts providing any "reasonable assurance" that the unidentified and unknown relationship with purported "buyers" would have matured into a contract. *S. Union.*, 180 F. Supp. 2d at 1048. Plaintiffs' allegation that something caused buyers to "reevaluate the case"—whatever that means— neither establishes nor supports the reasonable inference that a "specific business relationship" existed which would have "matured into a contract." *Id*. The Amended Complaint certainly does not allege Defendants knew of or "intentionally induced or cause[d] the termination of" any valid business expectancy. *Antwerp*, 130 Ariz. at 530-31.[4] For these reasons, Count Two should be dismissed with prejudice.

---

[4] "Liability" for tortious interference "must be based on more than the act of interference alone." *Safeway Ins. Co., Inc. v. Guerrero*, 210 Ariz. 5, 11 ¶ 20 (2005). There is "ordinarily no liability absent a showing that defendant's actions were improper as to motive or means." *Id*. It is not even enough to demonstrate that defendant *knows* that "his or her conduct would induce

### 3. Plaintiffs' abuse of process claim fails.

Plaintiffs still have failed to state a claim for abuse of process. Pursuant to Arizona law, "a valid claim for abuse of process requires well-pleaded facts alleging that the Defendant used a *judicial process* during civil litigation or criminal prosecution." *Fappani v. Bratton*, 243 Ariz. 306, 309 ¶ 10 (App. 2017) (emphasis in original). Transmitting emails or correspondence to the Arizona Department of Liquor in connection with a regulatory investigation does ***not*** constitute the use of a "judicial process" as a matter of law. *Id*. Indeed, the *Fappani* court specifically recognized that "contacting law enforcement to complain about . . . conduct is not use of a judicial process." *Id*. at 310 ¶ 12.

Though Plaintiffs conclusorily assert that "judicial process includes the Scottsdale City court proceedings" (Doc. 21 at ¶ 85), Plaintiffs do not identify any actual "Scottsdale City court proceedings" in which any Defendant availed themselves of the use of process. And, in any event, Plaintiffs must identify some particular process, not just the existence of litigation. *Crackel v. Allstate Ins. Co.*, 208 Ariz. 252, 257 ¶ 14 (App. 2004) ("We agree with Allstate that a plaintiff must prove that one or more specific judicially sanctioned processes have been abused to establish an abuse-of-process claim."). In other words, Plaintiffs have not come close to alleging "plausible facts" necessary to establish this essential element of Count Three. *Iqbal*, 556 U.S. at 678. And though Plaintiffs nebulously refers to "testimony" (Doc. 21 at ¶ 54), it is highly dubious that testimony—even in a judicial proceeding—constitutes "process." 3 Dan B. Dobbs et al., *The Law of Torts* § 594 (2d ed. 2011) (noting that "process" includes a summons, subpoena, garnishment, writ of replevin, arrest warrant, or "other orders directly affecting obligations of persons or rights in property").

---

a breach." *Id*. Rather, to satisfy its requisite pleading burden, Plaintiffs were required to plead facts demonstrating manifest impropriety. *Id*. Moreover, while "[g]enerally, the issue of motive or the propriety of an action is one of fact," the question may be resolved "as a matter of law when there is no reasonable inference to the contrary in the record." *Neonatology Assocs., Ltd. v. Phoenix Perintatal Assocs., Inc.*, 216 Ariz. 185, 188 ¶ 8 (App. 2007).

1

2

### C.   Plaintiff's claims based on reporting to the Department of Liquor are barred by the *Noerr-Pennington* doctrine and absolute testimonial privilege.

3

4

To the extent that Plaintiffs' claims are predicated upon the provision of information by

Officer Smith and Detective Bailey to the Department of Liquor, such claims cannot survive as

5

a matter of law. As noted above, Plaintiffs agreed via binding consent decrees that the facts

6

provided to the Department of Liquor were true. It is well established that government officials

7

have immunity for the provision of accurate information to other branches of government

8

under the *Noerr-Pennington* doctrine, including administrative bodies. *See Kearney v. Foley &*

9

*Lardner, LLP*, 590 F.3d 638, 642–43 (9th Cir. 2009); *Kottle v. Nw. Kidney Centers*, 146 F.3d

1056, 1059 (9th Cir. 1998). That immunity specifically bars statutory liability under 42 U.S.C.

10

§ 1983. *Swallow v. Torngren*, 789 Fed. App'x 610, 611 (9th Cir. 2020) (citing *Kearney*, 590

11

F.3d at 643–48). Although the Ninth Circuit has not yet addressed the question, other circuit

12

courts of appeal have concluded that the doctrine also bars state common law claims that also

13

burden the rights of petition the doctrine is designed to protect.  *See, e.g.*, *Cheminor Drugs,*

14

*Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128 (3rd Cir. 1999).

15

To determine whether *Noerr-Pennington* immunity applies, the Court is directed to

16

consider three questions: (1) whether the pending lawsuit imposes a burden on petitioning

17

rights; (2) whether the allegedly wrongful conduct constitutes protected petitioning activity;

18

and (3) whether the law at issue can be interpreted in a manner that avoids the burden on those

19

petitioning rights. *B&G Foods N.A. v. Embry*, 29 F.4th 527, 535 (9th Cir. 2022) (citing

20

*Kearney*, 590 F.3d at 644).

21

Here, it is clear that Defendants were providing information to a governmental body,

22

the Department of Liquor, for purposes of petitioning that body to take action. The pending

23

lawsuit would unquestionably burden that petitioning activity, and there is no manner to

24

interpret either the state or federal claims to avoid that burden. Defendants' conduct is,

25

therefore, absolutely immune from liability under *Noerr-Pennington*. *Kearney*, 590 F.3d at

26

638. It makes no difference that the information was provided in an administrative, as opposed to traditional judicial, proceeding. *Kottle*, 146 F.3d at 1059–60.

In any event, even if Plaintiffs had actually identified the nature or forum for such "testimony," cases are legion explaining that "[a] statement made in the course of a judicial hearing is absolutely privileged as long as it bears some relation to the subject judicial proceeding." *Drummond v. Stahl*, 127 Ariz. 122, 125 (App. 1980). Thus, even if Detective Bailey or Officer Smith "testified," anything they said or did within the context of that proceeding as a fact witness cannot give rise to civil liability as a matter of law. *Id.*

**D.    The City is entitled to absolute immunity.**

In addition to Plaintiffs' pleading failures, the City has statutory immunity for its actions in regulating Loyalty Lounge. A.R.S. § 12-820.01 provides absolute immunity to a "public entity," and provides that a such an entity "shall not be liable for acts and omissions of its employees constituting either… the exercise of a judicial or legislative function, [or] the exercise of an administrative function involving the determination of the fundamental governmental policy."  The statute further clarifies that the "determination of a fundamental governmental policy" which "involves the exercise of discretion" includes "the licensing and regulation of any profession or occupation." *Id*.

The Arizona Supreme Court has clarified that the absolute immunity afforded by this statutory section does not only apply to "those professions and occupations listed in Title 32 of the Arizona Revised Statutes," but applies to *any* professional occupation. *Doe ex rel. Doe v. State*, 200 Ariz. 174, 178 ¶ 14 (2001) Here, it is beyond dispute that the ability to operate a bar is subject to licensure by the State of Arizona. It is further beyond dispute that the State and the City of Scottsdale maintain regulations for the lawful operation of bars.

The Amended Complaint establishes that any and all of the conduct allegedly engaged in by defendants Bailey and Smith were "in the course and scope of their employment" and directly connected to determining whether Plaintiffs could lawfully operate their bar

1  establishment. For these reasons, the conduct alleged by Plaintiffs falls within the ambit of the

2  statutory immunity afforded by the Arizona legislature, and dismissal of the claims against the

3  City is mandated.

4        **E.    Plaintiffs' claim for punitive damages must be dismissed.**

5        Plaintiffs' claim for punitive damages is absolutely foreclosed as a matter of Arizona

6  law. A.R.S. § 12-820.04 is clear and categorical: "neither a public entity nor a public employee

7  acting within the scope of his employment is liable for punitive or exemplary damages."

8  Despite the clear language of A.R.S. § 12-820.04, Plaintiffs still persist in asserting claims

9  against the Defendants. However, such damages "arising under state law… are not

10 recoverable." *See Spears v. Arizona Board of Regents*, 372 F. Supp. 3d 893, 896 (D. Ariz.

11 2019). Accordingly, Plaintiffs' claim for punitive damages must be dismissed with prejudice.

12                                       **CONCLUSION**

13       Plaintiffs have admitted to violating the law. They admit they surrendered their liquor

14 license as a result of those admitted violations. Their attempt to foist liability on the City of

15 Scottsdale and its employees for their admitted violations cannot withstand scrutiny. Instead,

16 for the reasons stated above and in the Motion, Plaintiffs' Amended Complaint should be

17 dismissed in its entirety with prejudice.

18       RESPECTFULLY SUBMITTED this 22nd day of April 2024.

19                         DICKINSON WRIGHT, PLLC

20                         By: */s/ Scot L. Claus*

21                                Scot L. Claus
                               Vail C. Cloar

22                                Holly M. Zoe
                               1850 N. Central Avenue, Suite 1400

23                                Phoenix, Arizona 85004
                               ***Attorneys for Defendants***

24

25

26

- 14 -

1  **<u>CERTIFICATE OF COUNSEL</u>**

2  Pursuant to Local Rule of Civil Procedure 12.1(c), I certify that on April 15, 2015, I

3  notified opposing counsel via email of the issues to be raised in the foregoing motion, and that

4  I did not believe the issues framed above could be cured via good-faith amendment. However,

5  I invited opposing counsel "to discuss" the foregoing issues telephonically. Opposing counsel

6  has not responded to my April 15, 2024 email nor otherwise proposed any curative

7  amendments.

8  By: */s/ Scot L. Claus*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

### CERTIFICATE OF SERVICE

2

I hereby certify that on April 22, 2024, I electronically transmitted the attached

3

document to the Clerk of the Court using the CM/ECF system, and which will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and

4

paper copies will be sent to those indicated as non-registered participants.

5

By:  /s/ Sheila Rath

6

4860-9245-6886 v7 [53387-19]

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26