**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| June Durr, et al., | No. CV-23-00752-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Scottsdale, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion to Dismiss (Doc. 22) Plaintiffs' First Amended Complaint ("FAC"). Plaintiffs filed a Response (Doc. 25), and Defendants filed a Reply (Doc. 26). After reviewing the briefing and the relevant case law, the Court will grant Defendants' Motion.

### I.      BACKGROUND

Plaintiffs' claims rest upon three alleged events and the fallout therefrom. Plaintiff June Durr owned Loyalty Lounge, a bar and restaurant located in Scottsdale, Arizona. (Doc. 21 at 3 ¶ 15.) The first event occurred in May 2021, when Durr was invited to a "meet and greet" with the Scottsdale Police Department ("SPD") members Detective Bailey and Officer Smith, but this meeting turned into an "impromptu liquor inspection." (*Id.* at 9–10 ¶¶ 59, 62–63.) Plaintiff alleges that after the inspection, Detective Bailey asked her to sign a blank form, which served as part of a false report submitted to the Arizona Department of Liquor ("ADOL"). (*Id.* at 9–10 ¶ 61.) Second, in March 2022, Loyalty Lounge underwent a food and beverage audit that that found only 9.09% of its income was

derived from food sales in violation of the liquor license, which necessitated its forfeiture. (*Id.* at 5 ¶ 26, 6 ¶ 38, 8 ¶¶ 48–49.) Plaintiffs do not allege who conducted the audit. (*See id.*) Third, at some point, Plaintiffs were forced to plead guilty to a zoning violation reported to Plaintiffs' landlord by the Scottsdale Zoning Division. (*Id.* at 4 ¶ 21, 10 ¶ 69, 12 ¶ 86.) According to Plaintiffs, the information collected at these events and provided to ADOL and the "Scottsdale court" was false. (*Id.* at 9 ¶ 54.) On July 6, 2022, Plaintiffs entered a consent decree with ADOL, in which Durr admitted to violating the terms of the liquor license resulting in its surrender. (Doc. 21 at 8 ¶ 48.) The consent decree required the forfeiture of the license because "a Department audit showed that [Durr] failed to derive at least 40% of its gross revenue from food sales as required by [the license]." (Doc. 22-1 at 2.)

In July 2022, Plaintiffs submitted a public records request for departmental records "alleged to be the reason for the suspension and subsequent revocation of the license." (Doc 21 at 4 ¶ 25.) Plaintiffs also claimed that "[e]mails and questions asked leading up to the failed audit raised concerns." (*Id.* at 5 ¶ 27.) They additionally allege that Durr hired an expert who audited part time for liquor boards who "rechecked" the numbers and found that SPD's numbers were wrong, but that the Department "refused" to adjust their position. (*Id.*) Plaintiffs' loss of their liquor license resulted, combined with several complaints made to the landlord, resulted in the closure of Loyalty Lounge. (*See id.* at 3 ¶¶ 17–18.)

Plaintiffs initially brought six claims against the officers alleging three violations of 42 U.S.C. § 1983, gross negligence, interference with contract, and abuse of process. (Doc. 1.) The Court dismissed the three § 1983 claims, leaving only the state law claims. (*See* Doc. 20.) Thereafter, Plaintiffs filed an Amended Complaint, asserting gross negligence, interference with contract, and abuse of process against the City, Officer Bailey, and Officer Smith. (Doc. 21.) Defendants now bring this Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure asking the Court to dismiss all counts in the Amended Complaint. (Doc. 22.) For the reasons explained below, the Court will grant Defendants' Motion.

## II. LEGAL STANDARD

To survive a Federal Rule of Civil Procedure 12(b)(6) motion for failure to state a claim, a complaint must comply with Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

## III. DISCUSSION

### A. Officer Smith

Defendants argue the claims against Officer Smith should be dismissed because Plaintiffs failed to serve a notice of claim on him, and the Amended Complaint does not set forth sufficient allegations against him. (Doc. 22 at 5–6.) In response, Plaintiffs contend that "[g]iven the officer's common name," they could not ascertain his identity to serve him. (Doc. 25 at 9.) Additionally, Plaintiffs confusingly argue the dismissed federal claims were properly pleaded with respect to Officer Smith, and thus the City is still liable for his conduct. (*Id.*)

Arizona Revised Statute ("A.R.S.") § 12-821.01 requires persons who have claims against a public entity or public employee to serve a notice of claim on the entity and the employee. § 12-821.1(A); *City of Mesa v. Ryan*, No. CV-23-0284-PR, 2024 WL4509603, *2 (Ariz. Oct. 17, 2024) (reaffirming that "claimants must strictly comply with the [notice of claim] statute"). "If a notice of claim is not properly filed within the statutory time limit, a plaintiff's claim is barred by statute." *Falcon ex rel. Sandoval v. Maricopa County*, 144 P.3d 1254, 1256 (Ariz. 2006); *id.* ("Actual notice and substantial compliance do not excuse failure to comply with the statutory requirements of A.R.S. § 12–821.01(A).").

Plaintiffs, by their own admission, have not served Officer Smith within the 180-day period prescribed in § 12-821.01(A). Therefore, Plaintiffs' failure to strictly comply with Arizona's notice of claim statute dictates Officer Smith's dismissal from this case.

**B. Gross Negligence**

Defendants argue that Plaintiffs have not pleaded a "special relationship" that would impute a duty of care to the Defendant Officers. (Doc. 22 at 7–8.) In response, Plaintiffs quote passages from their Amended Complaint and invoke respondeat superior to argue that the City is vicariously liable for the acts of negligent Officers. (Doc. 25 at 11–12.)

A negligence claim generally requires proof of four elements: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Sanders v. Alger*, 394 P.3d 1083, 1085 (Ariz. 2017). A gross negligence claim additionally requires the plaintiff to show "[g]ross, willful, or wanton

conduct." *Armenta v. City of Casa Grande*, 71 P.3d 359, 364 (Ariz. Ct. App. 2003); *Noriega v. Town of Miami*, 407 P.3d 92, 98 (Ariz. Ct. App. 2017). The question of duty is a threshold issue and a question of law for the Court to decide "before the case-specific facts are considered." *Gipson v. Casey*, 150 P.3d 228, 232 (Ariz. 2007). "A defendant's conduct may create a special relationship that gives rise to a duty." *Hogue v. City of Phoenix*, 378 P.3d 720, 723 (Ariz. Ct. App. 2016). However, "the police do not owe a duty to every citizen within their jurisdiction from all potential harms." *Noriega*, 407 P.3d at 99; *cf. Hafner v. Beck*, 916 P.2d 1105, 1107 (Ariz. Ct. App. 1995) ("We do not understand the law to be that one owes a duty of reasonable care at all times to all people under all circumstances."); *see also Gipson*, 150 P.3d at 232 (explaining that "contract, family relations, or conduct undertaken by the defendant" may give rise to a duty of care).

"In Arizona, if police endeavor to provide specific protection to a particular person, they generally . . . have 'a duty to act as would a reasonably careful and prudent police department in the same circumstances.'" *Hogue*, 378 P.3d at 723 (quoting *Austin v. City of Scottsdale*, 684 P.2d 151, 153–54 (Ariz. 1984)). "Arizona courts have found that police conduct has created a special relationship giving rise to a duty only in specific circumstances, for example when a police take a 911 call about a potential threat and tell the caller that they will take action on that information." *Id.* However, the Parties have not apprised the Court of, nor could the Court independently locate, Arizona case law finding that an officer or government agent investigating or reporting on admitted illegal activity owed a duty to the suspect.[1]

Previously, this Court found that Plaintiffs failed to point to a special relationship, through conduct or otherwise, that gave rise to a duty of care. (Doc. 20 at 11.) This Court explained that Plaintiffs must have pleaded more than naked assertions that giving false testimony amounts to gross negligence regardless of duty. (*Id.*) This very issue still

---

[1] Defendants do provide two out-of-state cases finding that duty *does not* exist under these circumstances. *See, e.g.*, *Otero v. Warnick*, 614 N.W.2d 177, 182 (Mich. Ct. App. 2000) (explaining that an investigative witness's duty is owed to the court, not the adverse party); *Lahm v. Farrington*, 90 A.3d 620, 623 (N.H. 2014) (noting that the "common law tort of negligent investigation by law enforcement officers . . . [does not] exist").

- 5 -

1    plagues the Amended Complaint.  Therein, Plaintiffs allege that Officers Bailey and Smith
2    "acted outside the duty and standard of care required of them.  They knowingly gave false
3    testimony and/or evidence to a third party to wit the Arizona Liquor Department and/or the
4    Scottsdale court which was wanton misconduct that was flagrant and reflects a lawless and
5    destructive spirit." (Doc. 21 at 9 ¶ 54.)  And Plaintiffs seemingly believe the impetus for
6    Defendants actions was to crusade against Loyalty Lounge and Durr because Durr is a
7    black female, and SPD "did not want [Durr's] son around, who is also black." (*Id.* at 6
8    ¶ 34.)  SPD's *coup de gras* was falsely reporting Loyalty Lounge's transgressions to the
9    Arizona Liquor Board, eventually resulting in the restaurant's closure. (*See id.* at 3
10   ¶ 17–18.)

11        Plaintiffs' scattershot approach has not convinced this Court that any Defendant
12   owed a duty of care.  First, the allegations of "false reporting" Plaintiffs highlight evidence
13   breach, not duty. (*See* Doc. 25 at 10–11.)  As this Court previously noted, both Officers
14   had no relationship with Plaintiffs apart from investigating Loyalty Lounge.  And, again,
15   Plaintiffs offer inapposite case law to support their allegations.  They still rely on *Spooner*
16   *v. City of Phoenix*, 435 P.3d 462 (Ariz. Ct. App. 2018), which this Court already found
17   inapposite to the facts of this case. (Doc. 20 at 11.)  Additionally, Plaintiffs offer
18   *Chamberlain v. Mathis*, 729 P.2d 905, 909, 912 (Ariz. 1986), which is a defamation case
19   discussing qualified immunity, not gross negligence nor duty of care.  Thus, even assuming
20   the facts in the Amended Complaint as true, Plaintiffs have still not pleaded the Officers
21   owed them a duty of care.  A plaintiff may not simply shout "duty" from the rooftops and
22   expect a claim to materialize.  Pleading standards are clear—"[t]hreadbare recitals of the
23   elements of a cause of action, supported by mere conclusory statements, do not suffice,"
24   *Iqbal*, 556 U.S. at 678, and "conclusory allegations of law and unwarranted inferences are
25   not sufficient to defeat a motion to dismiss," *Pareto*, 139 F.3d at 699.[2]  Therefore,

---

[2] The Court, having found that Plaintiffs failed to establish duty, need not discuss whether Plaintiffs sufficiently pleaded that the Defendants actions amount to gross negligence, i.e., conduct that is "flagrant and evinces a lawless and destructive spirit." *Landeros v. City of Tucson*, 831 P.2d 850, 851 (Ariz. Ct. App. 1992) (quoting *Cullison v. City of Peoria*, 584 P.2d 1156, 1160 (1978) ("[W]anton (or gross) negligence is highly potent, and when it is present it fairly proclaims itself in no uncertain terms.  It is 'in the air,' so to speak.")).

1  Plaintiffs' gross negligence claim will be dismissed without prejudice.

## C. Tortious Interference with Contract

Defendants argue that Plaintiffs failed to adequately plead the existence of an "actual contract" with which any Defendant "actually interfered." (Doc. 22.) In response, Plaintiffs merely contend that "Paragraphs 66-80 of the Amended Complain sets [sic] forth that the contract being interfered with was the lease with the landlord, and the sale of the business." (Doc. 25 at 12.)

"To plead a prima facie case of intentional interference with contract, the plaintiff must allege: (1) the existence of a valid contractual relationship; (2) knowledge of the relationship on part of the interferor; (3) intentional interference inducing or causing a breach; (4) resultant damage to the party whose relationship has been disrupted; and (5) that the defendant acted improperly." *Snow v. W. Sav. & Loan Ass'n*, 730 P.2d 204, 211 (Ariz. 1986) (citations omitted). "[T]o prevail on a claim of tortious interference with a business relationship, when the relationship is prospective, there must be a reasonable assurance that the contract or relationship would have been entered into but for the interference." *S. Union Co. v. Sw. Gas Corp.*, 180 F. Supp. 2d 1021, 1048 (D. Ariz. 2002) (cleaned up).

Previously, this Court found Plaintiffs pleaded insufficient facts to sustain a tortious interference with contract claim as it related to the potential sale of the business or the lease agreement. (*See* Doc. 20 at 11–12.) This Court deemed those allegations unsupported and conclusory because Plaintiffs did not evidence the existence of a contract either with the landlord or potential buyers nor specify what actions, by either the landlord or Defendants, that supported interference with the supposed contract. (*Id.*)

Plaintiffs' Amended Complaint suffers from the same defects. Therein, Plaintiffs again declare that they were in the process of selling Loyalty Lounge and that "Defendants [actions] caused buyers to reevaluate the case and caused the sales not to go through." (Doc. 21 at 10 ¶¶ 66–67.) The sole new allegations of moment include the claim that "[when] there was an incident outside or around the corner from Loyalty's, Plaintiffs'

- 7 -

business (Loyalty') [sic] was always highlighted as being the culprit." (Doc. 21 at 11 ¶ 71.) The allegations that follow suggest because Loyalty Lounge was being unfairly targeted in the local media and Officer Bailey broke "doors and locks," the relationship between Plaintiff Durr and the landlord soured. (*Id.* ¶¶ 72–74, 77–78). Fatally missing, however, are more-than-conclusory allegations that the landlord terminated the lease or that there was a contract, prospective or actual, for the sale of Loyalty Lounge. *See Snow*, 730 P.2d at 211; *S. Union Co.*, 180 F. Supp. 2d at 1048. Plaintiffs have not, and seemingly cannot, "identify the specific relationship with which the defendant interfered." *Dube v. Likins*, 167 P.3d 93, 101 (Ariz. Ct. App. 2007). Therefore, Plaintiffs' tortious inference with contract claim will be dismissed without prejudice.

### D. Abuse of Process

Defendants argue that Plaintiffs fail to state a claim for abuse of process because the Amended Complaint does not set forth what process was used nor how its purpose was improper. (Doc. 22 at 11.) In response, Plaintiffs cite to the landlord's deposition testimony and maintain that "paragraphs 84-89 . . . set forth sufficient facts to show that the Defendants used the Scottsdale courts for improper purpose." (Doc. 25 at 12–13.)

To have an abuse of process claim a plaintiff must allege both that there was (1) a willful act in the use of judicial process (2) and that it was used for an ulterior purpose that is not proper in the regular conduct of the proceedings. *Crackel v. Allstate Ins. Co.*, 92 P.3d 882, 887 (Ariz. Ct. App. 2004). Underpinning these elements is the requirement that a plaintiff set forth factual allegations identifying *actual* court proceedings, *see id.* at 889 (citing *Nienstedt v. Wetzel*, 561 P.2d 876, 882 (Ariz. Ct. App. 1982)), and that a plaintiff "present more than mere speculation" that the process was for an improper purpose, *id.*; *see also Fappani v. Bratton*, 407 P.3d 78, 81 (Ariz. Ct. App. 2017) ("[A] valid claim for abuse of process requires well-pleaded facts alleging that the defendant used a *judicial* process during civil litigation or criminal prosecution.").

Previously, this Court found that Officer Bailey's provision of information to the Department of Liquor likely did not constitute process. (Doc. 20 at 14.) But, even if it did,

Plaintiffs' claim failed because "Officer Bailey is entitled to immunity from civil liability for this 'testimony.'" (*Id.*); *see also Drummond v. Stahl*, 618 P.2d 616, 619 (Ariz. Ct. App. 1980) ("A statement made in the course of a judicial hearing is absolutely privileged as long as it bears some relation to the subject judicial proceeding."). Additionally, this Court found Plaintiffs' allegations to be "entirely conclusory and speculative," thereby warranting dismissal. (Doc. 20 at 14.)

Plaintiffs' new allegations include an excerpt of deposition testimony given by their former landlord and that "judicial process includes the Scottsdale City court proceeding." (Doc. 21 at 12–13 ¶¶ 85, 88–89.) The landlord's deposition testimony does nothing to support Plaintiffs' claims. The testimony does not shed light on any legal proceedings or set forth a basis for using such a proceeding for an improper purpose. (*See id.* at 12–13 ¶¶ 88–89.) Plaintiffs seemingly attempt to weaponize this testimony to stoke nonsensical theories of racial animus being the driving force behind the Officers' actions.

The portions of the Amended Complaint Plaintiffs cite are devoid of legal or factual allegations that evidence the occurrence of a legal proceeding or if one occurred how contacting state agencies to complain of illegal conduct amounts to process. *See Fappani*, 407 P.3d at 82 (finding that "contacting law enforcement to complain about a neighbor's conduct is not use of a judicial process" for an abuse of process claim). And again, even if it were process, Plaintiffs have not overcome the fact that Officer Bailey's testimony is entitled to immunity. (*See* Doc. 20 at 13); *Drummond*, 618 P.2d at 619 ("A statement made in the course of a judicial hearing is absolutely privileged as long as it bears some relation to the subject judicial proceeding.").

Plaintiffs have utterly failed to contend with any of the analysis in this Court's prior Order. Additionally, Plaintiffs fail to show how reporting information is process, how Officer Bailey is not cloaked in immunity under these circumstances, or identify a legal proceeding used for an improper purpose. Therefore, the Court finds that Plaintiffs' abuse of process claim fails and will be dismissed without prejudice.[3]

---

[3] Plaintiffs' claims against the City are predicated on the Defendant Officers' conduct during the scope of their employment. Because Plaintiffs' claims against the Officers fail,

### E. Punitive Damages

Plaintiffs allege that "[a]t the time of events relevant herein, the individual Defendants were acting within the course and scope of their employment with City of Scottsdale, a governmental entity." (Doc. 21 at 2 ¶ 7.) However, A.R.S. § 12-820.04 states that "[n]either a public entity nor a public employee acting within the scope of his employment is liable for punitive or exemplary damages." Despite Defendants challenging Plaintiffs' punitive damages allegation (Doc. 22 at 14), Plaintiffs do not offer a substantive argument in response (*see* Doc. 25 at 13). Instead, Plaintiffs simply maintain that punitive damages are appropriate and properly pleaded. (*Id.*) Arizona law makes clear that a plaintiff may "not recover punitive damages on his state law claims from any public entities or employees acting within the scope of their duties." *Carey v. Maricopa County*, 602 F. Supp. 2d 1132, 1144 (D. Ariz. 2009). And because Plaintiffs allege that Defendants in this case were acting within the scope of their employment, Plaintiffs are barred from recovering punitive damages on their state law claims. *See id.*

## IV. LEAVE TO AMEND

A Court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend is properly denied "if amendment would be futile." *Carrico v. City of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). This Court dismissed Plaintiffs' initial Complaint (Doc. 1) with leave to amend the claims discussed above. The prior Order (Doc. 20) discussed with specificity the reasons why Plaintiffs' allegations were insufficient to state claims for relief. As noted above, Plaintiffs have not pleaded additional facts or law that ameliorate the issues of the initial Complaint. In fact, Plaintiffs added little—if anything at all—to further substantiate their state law claims.

---

their claims against the City must also fail. However, even if the Court cognized a claim as being alleged under theories distinct from vicarious liability, the City is immune. *See* A.R.S. § 12-820.1(A), (B)(3); *see also See Doe ex rel. Doe v. State*, 24 P.3d 1269, 1273 (Ariz. 2001) (explaining that the "professions and occupations" clause of § 12-820.01(B)(3) does not restrict immunity to only those professions and occupations appearing in A.R.S. Title 32). Plaintiffs' allegations as they relate to the City's role in the alleged scheme center around false testimony being the basis for an adverse decision against Plaintiffs at an unspecified Scottsdale City Court hearing. (*See* Doc. 21.) Thus, any claim against the City necessarily falls within the ambit of Arizona's absolute immunity statute for municipal corporations. *See* § 12-820.01(A).

Consequently, this Court will not grant leave to amend because any amendments would prove futile. *See Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018).

## V.   CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED granting** Defendants' Motion to Dismiss (Doc. 22) and dismissing Counts I, II, and III in the Amended Complaint (Doc. 21) without prejudice.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment consistent with this Order and terminate this case.

Dated this 1st day of November, 2024.

Honorable Susan M. Brnovich
United States District Judge